Isaiah **HEDGEPETH**, Jr., Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 19509.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 25, 1966.

Decided June 30, 1966.

---

Mr. William R. Duff, Washington, D. C. (appointed by this Court), for appellant.

Mr. John A. Terry, Asst. U.S. Atty., with whom Messrs. David G. Bress, U.S. Atty., and Frank Q. Nebeker and Harold H. Titus, Jr., Asst. U.S. Attys., were on the brief, for appellees.

Before WRIGHT, MCGOWAN and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

Appellant was convicted on three counts of violations of the federal narcot-

ics laws, 26 U.S.C. §§ 4704(a) and 4705 (a), and 21 U.S.C. § 174. He received concurrent sentences of ten years on two of the counts, and five years on the third. His sole contention on appeal is that he was denied his Sixth Amendment right to a speedy trial. Since the claim has prima facie merit, in view of the lapse of more than a year between appellant's arrest on May 7, 1964, and his trial on May 12, 1965, we undertake a review of the intervening events.

When appellant was arrested on May 7, 1964, he was charged, along with one William Green, Jr., with possession and sale of narcotics to a police officer on March 24, 1964. May 8, he was committed to D.C. Jail. May 21, a preliminary hearing was held and probable cause found. June 22, appellant and Green were indicted. June 26, he pleaded not guilty.

On July 21, 1964, appellant's first court-appointed counsel moved to be relieved from his assignment on the ground that appellant and he disagreed on the fundamental issue of guilt or innocence. The motion was granted and the case referred for appointment of new counsel. On August 6, appellant's trial was postponed until the week of September 28, 1964, to allow the newly-appointed counsel time to prepare. On August 19, 1964, the second counsel's appointment was vacated, and the court appointed a third counsel—who promptly informed the court that he could not accept the appointment because he was now employed by the Government. On September 10, 1964, the court vacated the third appointment and appellant's fourth and final counsel was appointed to represent him in this case and in another narcotics prosecution involving appellant.

On September 17, 1964, the trial date was continued to the week of October 19, 1964, it being noted on the jacket that this was "at the request of defense counsel—counsel just appointed, has other commitments on 9/28/64 and needs more time to prepare case for trial." Another continuance was sought, and granted on October 22—to the week of November 30,

1964—because of personal medical problems of appellant's counsel.

On November 27, 1964, another continuance was sought—this time by counsel for co-defendant Green. Green had not been apprehended until November 6, and his counsel had just been appointed. The trial date was continued to the week of January 18, 1965. On January 14, 1965, appellant's counsel moved for another continuance, on the ground that he intended to call Green as a witness in his case, and that on January 8, 1965, Green had been committed to St. Elizabeths Hospital for a pre-trial mental examination. The following colloquy occurred:

THE COURT: Does he [appellant] agree with this arrangement?

DEFENSE COUNSEL: Yes, sir.

THE COURT: The case was continued from October 22 at your request, is that correct?

DEFENSE COUNSEL: That is correct.

THE COURT: Until the 18th of January?

DEFENSE COUNSEL: That is correct. I was ill, sick and tired.

THE COURT: That is all right. Just in case there is a question of the lack of a speedy trial raised, I want something in the record.

DEFENSE COUNSEL: I do have the consent of the defendant.

The record includes a letter from appellant, dated January 12, 1965, stating that he acquiesced in his counsel's motion for the continuance. The motion was granted and the case continued to the week of March 15, 1965.

On March 15, 1965, the case was called for trial. The Government requested a continuance so that both appellant and Green could be tried together. The court then raised the possibility of severance:

THE COURT: I don't see why you don't sever.

PROSECUTOR: I think a severance would be a detriment to the Government. It would require two trials for the same offense and I would pre-

fer to have them both tried at the same time, sir.

DEFENSE COUNSEL: I have no objection, Your Honor.

The continuance was granted. The court ordered that the new trial date be set March 17, at the time of Green's competency hearing. On March 17, however, the competency hearing for Green was continued to allow his counsel seven days to file a motion for appointment of an independent psychiatrist. On April 2, 1965, that motion was argued and granted, the court ordering that the report of the independent psychiatrist be filed no later than May 1, 1965, and setting the trial for the week of May 10, 1965. On May 11, 1965, appellant filed a motion to dismiss the indictment for want of a speedy trial. It was heard and denied that day, and appellant went to trial the following day, May 12, 1965.

Thus, the elapsed time between appellant's arrest and his trial was a little over one year; between indictment and trial, a little over ten and a half months. During this entire period he was incarcerated. Bail had been set at $2500, but appellant apparently either could not afford the premium on the bond or was unable to find a bondsman who would write the bond. A motion for release on personal recognizance was denied.

We begin with some general reflections. The purpose of the Sixth Amendment guarantee of speedy trial, and the need to harmonize it with the deliberate pace appropriate to satisfy other protections of the accused, have been the subject of recent Supreme Court exposition: [1]

> [T]he Sixth Amendment's guarantee of a speedy trial * * * is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself.

Whether a delay in bringing a defendant to trial results in a denial of his right to a speedy trial requires an analysis of the particular circumstances of each case.[2] There is no touchstone of time which sets a fixed maximum period that automatically requires application of the Sixth Amendment and dismissal of the indictment. Time is but one factor, albeit the most important; the longer the time between arrest and trial, the heavier the burden of the Government in arguing that the right to a speedy trial has not been abridged. Other factors to be considered are the reasons for the delay, the diligence vel non of prosecutor, court, and defense counsel, and the likelihood, or at least reasonable possibility, that defendant has been prejudiced by the delay.[3] It must be borne in mind that the pros-

1. United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966).

2. United States v. Ewell, *supra* note 1; Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957); Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 49 L.Ed. 950 (1905); Hanrahan v. United States, 121 U.S.App.D.C. 134, 137–139, 348 F.2d 363, 366–368 (1965); Smith v. United States, 118 U.S. App.D.C. 38, 41, 331 F.2d 784, 787 (1964) (en banc). See generally Note, 57 COLUM.L.REV. 846 (1957); Note, 108 U.PA.L.REV. 414 (1960).

3. The possibility of prejudice from the delay is an important factor in close cases. But the very assumption of the Sixth Amendment is that unreasonable delays are by their nature prejudicial. It is not generally necessary for the defendant to demonstate affirmatively how he has been prejudiced by an unreasonable delay. Of course, the likelihood of prejudice is undoubtedly an inevitable consideration in determining whether a particular delay is undue. See Note, 57 COLUM.L.REV. 846, 852 (1957); United States v. Lustman, 258 F.2d 475, 477–478 (2d Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958). For the view that prejudice is the key to what remedy is appropriate for denial of a speedy trial, see Note, 64 YALE L.J. 1208 (1955).

Prejudice is considered to be presumed from, or necessarily inherent in, a long delay. Petition of Provoo, 17 F.R.D. 183, 203 (D.Md.), affirmed *per curiam*, 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955).

ecution, not the defense, is charged with bringing a case to trial. The Government may not "sit back" and then argue that defendant's inaction conclusively waived his right to a speedy trial.[4] On the other hand, it is equally clear that the Constitution cannot be applied so as to reward defense counsel who tolerates delay for tactical reasons.

Reviewing all the circumstances of the case at bar, we conclude that there was no violation of appellant's Sixth Amendment rights. The long delay in trial is deplorable, particularly since appellant was in jail for want of bail.[5] But we cannot say that the delay was "arbitrary, purposeful, oppressive or vexatious."[6] Nor was it the result of such negligence or callous indifference to the requirement of speedy trial as to result in similar constitutional consequences.

Trial was set, reasonably promptly, for the week of August 6, 1964. The delays from then until March 15, 1965, i. e. the bulk of the total period, were a direct result of continuances requested by appellant's counsel, or by counsel for appellant's co-defendant with the consent of appellant and his counsel. The first two continuances were related to successive changes in appellant's counsel, described above. They carried the case to the week of October 22, 1964. The delay from October 22, 1964, to March 15, 1965, was due to the illness of appellant's counsel, and, significantly, to appellant's desire to call co-defendant Green as a witness. During this period, appellant's counsel presented evidence that appellant consented to the delays.

Although we agree with the Government that the delay up to March 15, 1965, is fairly attributable to appellant and does not, in itself, constitute denial of a speedy trial,[7] this does not mean that this period is to be disregarded. The passing of such a considerable length of time, no matter who is "at fault," should act as a spur to the Government to seek prompt trial. If the Government is lax in this regard, it is appropriate to take the earlier period into account in determining whether there has been a denial of the right to a speedy trial.

The remaining delay, from March 15 to May 13, 1965, amounts to almost two months. The motion for continuance was made by the Government, which desired to try appellant and Green together. But at the March 15 hearing, appellant's counsel acquiesced in the Government's suggestion even though the court itself raised the possibility of a severance.[8] Indeed, appellant on the record could have been considered unjustly

---

4. See People v. Prosser, 309 N.Y. 353, 357–359, 130 N.E.2d 891, 894–895, 57 A.L.R.2d 295 (1955). Inaction by defendant is a factor to be taken into account in determining whether there has been unreasonable delay, e. g., as indicating that the delay was tolerated for tactical purposes.

5. It should be observed that since appellant was indicted and convicted under statutes which carry a minimum mandatory sentence, the time spent in jail prior to sentencing is automatically credited toward service of his sentence. 18 U.S.C. § 3568. This assurance of credit may be a disincentive to press for an early trial, especially in the case of a defendant who has reason to believe that prompt trial will result in conviction, and that defense chances may be improved by delay and later unavailability of witnesses against him.

6. Smith v. United States, 118 U.S.App.D.C. 38, 41, 331 F.2d 784, 787 (1964) (en banc).

7. Rindgo v. United States, 120 U.S.App. D.C. 138, 344 F.2d 523 (1964), cert. denied, 380 U.S. 938, 85 S.Ct. 951, 13 L. Ed.2d 825 (1965); Mattoon v. Rhay, 313 F.2d 683 (9th Cir. 1963).

8. We are not advised why appellant's counsel did not move for a severance before trial. He did ask for a severance on the morning of the trial. Over strenuous Government objection the District Judge granted the motion for severance and postponed Green's trial, but only after receiving assurances from Green that he was willing to testify in appellant's trial if a severance were granted. The trial of appellant then proceeded. Appellant did not call Green as a witness. The Dis-

aggrieved in having to go to trial at a time when Green was under medical examination, particularly in view of the defense motion made January 14, 1965, concurred in by appellant personally, seeking continuance because of his intention to call Green as a witness. In the circumstances we find that this additional two month delay, even when taken as superimposed on the prior long delay, was neither so long nor of such character as to constitute a denial of appellant's constitutional right to a speedy trial.

Affirmed.

trict Judge was understandably surprised. Appellant's counsel explained that he had talked with Green at lunch and discov-

ered that "he had suddenly had a lapse of memory and didn't remember anything that had occurred."