James O. HINTON, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

No. 22068.

United States Court of Appeals
District of Columbia Circuit.

Argued April 23, 1969.

Decided Oct. 14, 1969.

Petition for Rehearing Denied
Dec. 19, 1969.

20. 4 C.F.R. § 31.7 (1969).

Mr. I. Irwin Bolotin, Washington, D. C., (appointed by this court) for appellant.

Mr. Daniel E. Toomey, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., at the time the brief was filed, and Frank Q. Nebeker, Asst. U. S. Atty., at the time the brief was filed, were on the brief, for appellee.

Before McGOWAN, LEVENTHAL and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Appellant was convicted on two counts of an indictment for narcotic offenses,[1]

---

1. Count one charged appellant with violating 26 U.S.C. § 4704(a) which provides: It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection

emanating from his possession of 30 capsules allegedly containing heroin which were found in a pocket of the jacket he was wearing when arrested. He contends (1) that, for lack of probable cause for the arrest, the capsules were illegally seized, (2) that the fifteen-month delay between his arrest and trial infringed his Sixth Amendment right to a speedy trial, and (3) that the evidence was insufficient to show that the capsules contained more than a trace of a narcotic drug. We find no error to warrant reversal.

## I

On the night of January 11, 1967, appellant was arrested in the company of a friend, Wendell Ford, while in the lobby of an apartment building en route to the apartment of a friend of Ford's. Seven police officers had arrived at the building at about the same time to execute a search warrant on Apartment 502, where quantities of narcotics were alleged to be. The officers saw appellant and Ford approaching the building and followed them inside. One of the officers, Sergeant David Paul, recognized Ford as a former narcotics user, and another remembered that an attachment from the Court of General Sessions was outstanding against him. They then heard Ford tell the security guard in the lobby that he wanted Apartment 502 and, when he saw the police, that he wanted Apartment 506 instead.

Thereupon, the officers approached appellant and Ford, and placed Ford under arrest. A search of Ford uncovered a loaded gun, and a bottle of capsules containing traces of a white powder. At this point, appellant, who had not been detained or searched, began to run down a corridor. Sergeant Paul chased him, and appellant stopped. Asked why he ran, appellant replied that he did not know why he was in the building, and that he was on his way to another address. Appellant was then arrested and searched, and 30 full capsules containing heroin were found in his jacket pocket.[2]

This case does not pose the problem of investigatory detention for a crime committed elsewhere,[3] or test the limits of preventative patrolling in areas of frequent criminal activity.[4] Instead, the apprehension of Ford and the arrest of appellant were something of a windfall for the seven police officers, who arrived at the apartment building to find that

by the person in whose possession the same may be found.

Count two charged a violation of 21 U.S.C. § 174 which provides:

Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law * * *, shall be imprisoned not less than five or more than twenty years * * *.

Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury.

2. This was the version of appellant's arrest and search established by Sergeant Paul's testimony at the pretrial hearing of a motion to suppress the capsules. Appellant gave a different account, and specifically denied that he had run away. District Judge Smith denied the motion, and it is clear from the transcript of the hearing that in so doing he resolved the conflicts in testimony against appellant. The record adequately supports this resolution, and Sergeant Paul's testimony was subsequently corroborated at the trial by a Detective Robert Bush, one of the other police officers present at the arrest.

3. See Brown v. United States, 125 U.S. App.D.C. 43, 365 F.2d 976 (1966); Bailey v. United States, 128 U.S.App.D.C. 354, 389 F.2d 305 (1967).

4. See Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Dorsey v. United States, 125 U.S.App. D.C. 355, 372 F.2d 928 (1967); Washington v. United States, 130 U.S.App.D.C. 144, 397 F.2d 705 (1968).

appellant and Ford were going their way. The problem here is one of probable cause for appellant's arrest, a requirement that mediates between the personal right to security from arbitrary intrusions by the police and the practical need to allow police officers reasonable play for their experience in judging actions and situations signaling the commission of crime.[5] And within these bounds, the elements of a finding of probable cause are as varied as encounters between citizens and police; seldom does a decision in one case handily dispose of the next.

At the hearing on the motion to suppress, Sergeant Paul gave four reasons for his decision to arrest appellant, who was not a known narcotics user. Appellant was in the company of Ford, a known user. Ford had requested Apartment 502, which the police had a warrant to search for narcotics. Ford was armed and had a quantity of drugs. Appellant started to run away. From those facts, the officer concluded that appellant, too, was violating the narcotic laws, and we think the facts gave reasonable warrant for the belief that he had.

Courts have never countenanced arrest by association;[6] nor is flight a reliable indicator of guilt without other circumstances to make its import less ambiguous.[7] It has long been "a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses."[8] Nevertheless, flight from the police may provide "additional justification"[9] for an arrest and, "when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime,"[10] it may properly be considered in assessing probable cause.

We would hesitate to hold that the facts that appellant was found with Ford and bolted when Ford was arrested and searched added up to probable cause,[11] but there was another circumstance connecting appellant to a violation of the narcotic laws. Both appellant and Ford were on their way to an apartment which the police had reasonable grounds to believe was a narcotics "pad."[12] If appellant and Ford had been in Apartment 502 when the police arrived, and if narcotics had been uncovered, there very likely would have been probable cause to arrest both.[13] While Sergeant Paul could not be certain that the raid on Apartment 502

---

5. Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

6. Sibron v. New York, *supra* note 4, 392 U.S. at 47, 88 S.Ct. 1889; Perry v. United States, 118 U.S.App.D.C. 360, 361, 336 F.2d 748, 749 (1964).

7. Wong Sun v. United States, 371 U.S. 471, 483 n. 10, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Miller v. United States, 116 U.S.App.D.C. 45, 46, 320 F.2d 767, 768 (1963) (opinion of Chief Judge Bazelon); Bailey v. United States, 135 U.S.App. D.C. 95, at 99, 100, 416 F.2d 1110, at 1114, 1115 (1969); Austin v. United States, 134 U.S.App.D.C. 259, 414 F.2d 1155 (1969).

8. Alberty v. United States, 162 U.S. 499, 511, 16 S.Ct. 864, 868, 40 L.Ed. 1051 (1896).

9. Jackson v. United States, 134 U.S.App. D.C. 18, 412 F.2d 149, 153 (1969).

10. Sibron v. New York, *supra* note 4, 392 U.S. at 66–67, 88 S.Ct. at 1904.

11. Our decision in Green v. United States, 104 U.S.App.D.C. 23, 259 F.2d 180 (1958), cert. denied, 359 U.S. 917, 79 S. Ct. 594, 3 L.Ed.2d 578 (1959), would not support such a finding. There we commented on flight as an element of probable cause in the case of a man who fled when police approached his companion, a known narcotic addict. He was arrested, not for the narcotic offenses for which he was subsequently charged, but for attempted unlawful entry into the house of a stranger as he tried to escape.

12. The police did in fact uncover narcotics in Apartment 502, and other arrests were made.

13. Carrado v. United States, 93 U.S.App. D.C. 183, 192, 210 F.2d 712, 721–722 (1953), cert. denied Atkins v. United States, 347 U.S. 1018, 1020, 74 S.Ct. 874, 98 L.Ed. 1140 (1954), Smith v. United States, 349 U.S. 932, 758 S.Ct. 777, 99 L.Ed. 1262 (1955).

would uncover narcotics or that appellant knew where Ford was taking him, we think he could reasonably make both assumptions in deciding to arrest appellant, and that they served to anchor an incriminating implication possible from appellant's flight.

## II

■■■ Denial of the Sixth Amendment right to speedy trial is a form of punishment never excused by a belated conviction. For the accused, delay may mean pretrial imprisonment, anxiety, prejudice to his defense, or all of these.[14] A delay of more than a year between arrest and trial raises a speedy trial claim of *prima facie* merit.[15] Further generalizations are not profitable, however, for still longer delays may be necessary consequences of other proceedings for the benefit of the accused.[16] "[T]he question whether there has been denial of the right to a speedy trial depends upon the circumstances of the case, and requires consideration of the length of delay; reasons for the delay; diligence of prosecutor, court and defense counsel; and reasonable possibility of prejudice from the delay." [17]

Appellant was arrested on January 11, 1967, indicted on March 20, and arraigned on March 31, after the appointment of counsel. He was released on personal recognizance on April 7. Proceedings on appellant's motion to suppress took place in May and June, and the transcript of the suppression hearing was ordered prepared on August 17. The case was placed on the ready calendar for trial on September 11, nine months after appellant's arrest, and was first called on November 20, but a continuance to December 4 was granted at the request of the defense. On that date, appellant did not check in at the District Court's assignment office, as he was supposed to do, and his bond was revoked and a bench warrant issued for his arrest. He was finally tried five months later, on April 24, 1968. In toto, the proceedings extended over fifteen months.

Until December, appellant's case had proceeded at a deliberate pace. We focus, then, on the delay of five months after the December trial date. This delay is accounted for by the fact that the prosecutor thought that appellant was a fugitive when he was actually a prisoner, in jail on another offense. Defense counsel said he had informed both the assignment office and the prosecutor of appellant's whereabouts three weeks after the December trial date, although pertinent records do not indicate notice of this fact. About three months later, when counsel was asked to advise the chief judge of the District Court of the status of the case, his letter of reply, dated March 13, 1967, explained that appellant was not a fugitive. At the ensuing hearing before the chief judge on April 11, defense counsel first moved, without success, to dismiss the indictment for want of a speedy trial. The motion was renewed, and denied at the trial.

There is no reason to doubt the prosecutor's belief that appellant had fled. The Government was ready for trial in September, 1967, and had nothing to gain by foot-dragging. We have had occasion to admonish that the Government takes "a double risk in delay," [18] for witnesses may disappear and the passage of time may present a sufficient likelihood of such prejudice to the defense that a fair trial is impossible, on account of which

14. United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966).

15. Hedgepeth v. United States (Hedgepeth I), 124 U.S.App.D.C. 291, 293, 364 F.2d 684, 686 (1966).

16. Blunt v. United States, 131 U.S.App. D.C. 306, 404 F.2d 1283, 1287 (1968), cert. denied, 394 U.S. 909, 89 S.Ct. 1021, 21 L.Ed.2d 221 (1969).

17. Hedgepeth v. United States (Hedgepeth II), 125 U.S.App.D.C. 19, 21, 365 F.2d 952, 954 (1966).

18. Smith v. United States, 135 U.S.App. D.C. 284, at 287, 418 F.2d 1120, at 1123 (1969).

the indictment must be dismissed. We must assume, too, that defense counsel did attempt to inform the Government of appellant's whereabouts; we would not condone his engaging the prosecutor in a game of hide-and-seek with the accused for tactical reasons. At the same time, since appellant was apparently in jail on a separate charge and might not have won release through an earlier trial of the instant offenses, we do not exclude the possibility that defense counsel acquiesced in the delay.[19] Given the spare state of the record, we stop short, however, of considering whether appellant's speedy trial claim may have been lost by his counsel's failure to take formal action to expedite the case until he was questioned about it by the chief judge.[20]

The delay here may have been the result of institutional inefficiency, a failure of communication between the different offices of government concerned with appellant. The chief judge, for his part, expedited the case with the inquiry to defense counsel. And although it is in any event the duty of the prosecutor to bring the case to trial, we cannot characterize a delay as "arbitrary, purposeful, oppressive or vexatious"[21] or the product of indifference[22] when the prosecutor believes the defendant is unavailable for trial, and the vexation of defense counsel, if not the appellant, does not move counsel to follow up on the matter. We turn, then, to the question of prejudice.

It appears that appellant was incarcerated in connection with the instant offenses for only the two-month period between his arrest and indictment. No objection was made to this period of preindictment delay,[23] and appellant does not claim prejudice to his person from imprisonment during any part of the fifteen months of proceedings. He contends, however, that his defense was severely prejudiced by the unavailability of Ford, his companion at the apartment building, as a witness for the defense by the time trial was finally had.[24] Ford, at liberty while awaiting trial on another charge, had taken flight,[25] and appellant asserts that had Ford been available he would have corroborated appellant's defense that he had borrowed the jacket he was wearing from Ford and did not know that there were narcotics in the pocket.

We are compelled to agree with the Government that testimony from Ford favorable to this defense was unlikely under the circumstances, since it would have required that Ford incriminate himself on the charges for which appellant was being tried. Assuming that appellant's story was true, we nonetheless think it was too much to hope that Ford would waive his own Fifth Amendment

19. Hedgepeth v. United States (Hedgepeth I), *supra* note 15, 124 U.S.App.D.C. at 295, 364 F.2d at 688.

20. Compare Mathies v. United States, 126 U.S.App.D.C. 98, 100 n. 1, 374 F.2d 312, 314 n. 1 (1967); James v. United States, 104 U.S.App.D.C. 263, 261 F.2d 381 (1958), cert. denied, 359 U.S. 930, 79 S. Ct. 613, 3 L.Ed.2d 631 (1959). But see Harling v. United States, 130 U.S.App.D.C. 327, 401 F.2d 392 (1968), cert. denied, 393 U.S. 1068, 89 S.Ct. 725, 21 L.Ed.2d 711 (1969).

21. Smith v. United States, 118 U.S.App.D.C. 38, 41, 331 F.2d 784, 787 (*en banc* 1964).

22. Hedgepeth v. United States (Hedgepeth I), *supra* note 15, 124 U.S.App.D.C. at 295, 364 F.2d at 688.

23. Nonetheless, we do not condone it. See Hood v. United States, 125 U.S.App.D.C. 16, 17 n. 1, 365 F.2d 949, 950 n. 1 (1966); Hanrahan v. United States, 121 U.S.App.D.C. 134, 137, 348 F.2d 363, 366 (1965).

24. *Cf.* Williams v. United States, 102 U.S. App.D.C. 51, 250 F.2d 19 (1957).

25. The exact date when Ford became unavailable is not clear from the record, but counsel agree that he was available for the December proceeding which was postponed, and that he was gone by April.

rights to extricate appellant.[26] Indeed, the fact that Ford fled to avoid punishment for one offense makes it highly improbable that he would have willingly implicated himself in another.

In addition, Sergeant Paul testified at the pretrial hearing on the motion to suppress that Ford denied that the jacket was his. This testimony could have been used to impeach Ford's corroboration of appellant's story had Ford cooperated. Without Ford, appellant was able to testify that Ford admitted to Sergeant Paul that it was his jacket, not appellant's, without rebuttal by the Government. All circumstances considered, Ford's unavailability for the trial did not, in our view, generate a significant possibility of prejudice to the defense.[27]

### III

Lastly, appellant asserts that the evidence was insufficient to prove the charged offenses beyond a reasonable doubt because the Government's expert witness, a chemist, could not state the exact quantity of heroin that was in the capsules discovered in appellant's possession upon his arrest. The capsules contained an "interference substance," the chemist explained, in consequence of which a quantitative test would have taken six months to a year to produce fully accurate results.

■■ This court has never held that the Government must prove the specific quantum of a narcotic drug possessed by the accused as a predicate for his conviction of narcotic offenses.[28] Here it was shown that the amount of heroin was more than a trace, and that it was capable of quantitative analysis.[29] The chemist testified that the powder found in the capsules contained a substantial amount of heroin, and supported his opinion with a detailed explanation of the tests he had conducted in arriving at the conclusion.[30] We hold that this was enough to discharge the Government's burden of establishing appellant's possession of heroin, and to permit the statutory inferences upon which the jury might base the convictions.[31]

Affirmed.

26. Cf. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

27. Smith v. United States, *supra* note 18, 135 U.S.App.D.C. at 289, 418 F.2d at 1125.

28. The question whether an amount of narcotics too small to be measured was sufficient to make out an offense was argued, but not decided, in Briscoe v. United States, 119 U.S.App.D.C. 41, 336 F.2d 960 (1964). Here the heroin content was not readily susceptible to quantitative measurement because of the interference substance, not because the amount was insubstantial.

29. This is the minimum standard adopted by the District of Columbia Court of Appeals in Edelin v. United States, 227 A.2d 395, 399 (1967).

30. The expert testified that chemical tests of the powder in the capsules yielded spots and crystals whose size or number indicated the substantiality of the narcotics present relative to mixtures with a known concentration of narcotics.

31. Appellant undertakes no challenge, constitutional or otherwise, to the presumptions authorized by the statutes, *supra* note 1, upon which the indictment rested, see Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); Turner v. United States, 395 U.S. 933, 89 S.Ct. 2001, 23 L.Ed.2d 448 (1969), granting cert. to 404 F.2d 782 (3d Cir. 1968), and we dispose of the case as it is presented. But see Matthews v. United States, No. 21,239 (D.C.Cir. Aug. 27, 1969), at 5 n. 12. See also Casey v. United States, 276 U.S. 413, 418, 48 S. Ct. 373, 72 L.Ed. 632 (1928); Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925); Walker v. United States, 414 F.2d 876 (5th Cir. 1969).