**UNITED STATES of America**

v.

**Arthur S. MEDLEY, Appellant.**

**No. 24949.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 4, 1971.

Decided Nov. 29, 1971.

Mr. Peter A. Greene (appointed by this court) for appellant.

Mr. William L. Gardner, Atty., Department of Justice, with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry and Edwin A. Williams, Asst. U. S. Attys., were on the brief, for appellee.

Before DANAHER, Senior Circuit Judge, and McGOWAN and TAMM, Circuit Judges.

I

PER CURIAM:

■ That physical facts in some circumstances may tend to establish essential corroboration of the *corpus delicti* in a case arising under D.C.Code Section 22–501 is clear enough, United States v. Bryant, 137 U.S.App.D.C. 124, 420 F.2d 1327 (1969); Coltrane v. United States, 135 U.S.App.D.C. 295, 300 n. 24, 25, and 301, 418 F.2d 1131, 1136 n. 24, 25, and 1137 (1969). But it is equally clear that in such a case there must be evidence, subject to such corroboration, that the accused sought to achieve carnal knowledge with force and against the consent of the victim. On this aspect, there can, and often will, arise a question preliminarily to be decided by the judge whether the evidence is legally sufficient to allow the case to go to the jury. Coltrane v. United States, *supra*, 135 U.S.App.D.C. at 303, 418 F.2d at 1139; Cooper v. United States, 94 U.S. App.D.C. 343, 346, 218 F.2d 39, 42 (1954); Baber v. United States, 116 U. S.App.D.C. 358, 324 F.2d 390 (1963). In *Baber* we concluded that a motion for directed verdict should have been granted where adequate proof was lacking that the accused intended to accomplish his purpose with force and against the consent of the female. *See* Allison v. United States, 133 U.S.App.D.C. 159, 164–165, 409 F.2d 445, 449–450 (1969), where we directed the entry of a judgment based upon a lesser included offense; and *see* United States v. Huff, 143 U.S.App.D.C. 163, 168, 442 F.2d 885, 890 (1971); United States v. Bryant, *supra.*

Here we find a departure from the usual Section 501 case where applicable criteria initially arise from the victim's complaint. The instant victim was mentally retarded, as the government stipulated. Although twenty-seven years of age, the woman had the "mind of a small child, around about seven years old, probably," her mother testified. That is "the reason why she is not going to testify," government counsel informed the jury. She was not called.

The trial judge in due course observed that "in a case of this sort ordinarily we have to talk about corroboration of the complaining witness' testimony, and I haven't any complaining witness' testimony."

The prosecutor replied, "Yes, I think corroboration is necessary."

The "corroboration" requirement, of course, as above noted, is here to be related to that element of the offense as charged that the accused sought to achieve carnal knowledge with force and against the consent of the victim.

Certainly that element may be established by circumstantial evidence, when, as here, the victim is incompetent to testify. Some states have legislated on this specific point, indeed yet others like Virginia and New York by statute additionally have ranked in like category, inmates of institutions for the deaf, dumb and blind.[1]

Our statute in terms omits "forcibly" and so dispenses with the consent aspect respecting a female child under sixteen years of age. Section 22–2801 (1967). We have no doubt that section, in a case like the present will be read to define, and so to apply the language found in Section 22–501 predicating the instant indictment.

Even so, the necessity for proof of the charge in its entirety remains just as spelled out in United States v. Huff, *supra* and United States v. Bryant, *supra*. *See, generally,* Johnson v. United States, 138 U.S.App.D.C. 174, 426 F.2d 651, *(en banc,* 1970), Farrar v. United States, 107 U.S.App.D.C. 204, 275 F.2d 868 (1960).

Here, as defense counsel argued in support of his motion for acquittal, the prosecutor later conceded "I think there is evidence in the case for giving simple assault."

We think that motion should have been granted respecting the charge set out in the indictment.

Conversely, it was abundantly shown that an assault had been committed, and as a lesser included offense, a judgment of guilty on that ground is appropriate.

## II

Turning to the "delay" issue, we have considered over and over again, various facets of the problem and we advert for present purposes first to the discussion and the authorities collected in Judge Burger's opinion in Nickens v. United States, 116 U.S.App.D.C. 338, 323 F.2d 808 (1963). We have often pointed out that the delay and its effect will be tested by circumstances, as in Smith v. United States, 118 U.S.App.D.C. 38, 41, 331 F.2d 784, 787 *(en banc,* 1964). Some situations have been extreme, indeed; *see* Williams v. United States, 102 U.S.App.D.C. 51, 250 F.2d 19 (1957), where a delay period of some seven years was involved.

As Judge Leventhal noted in Hedgepeth v. United States, 124 U.S.App.D.C. 291, 294, 364 F.2d 684, 687 (1966), "There is no touchstone of time which sets a fixed maximum period that automatically requires application of the Sixth Amendment and dismissal of the indictment." His discussion went on to analyze the circumstances and their effect to which he gave further attention in the second *Hedgepeth* case, Hedgepeth v. United States, 125 U.S.App.D.C. 19, 365 F.2d 952 (1966).

The *Hedgepeth* principles in terms of the possibility of prejudice were considered and applied in Blunt v. United States, 131 U.S.App.D.C. 306, 404 F.2d 1283 (1968), cert. denied, 394 U.S. 909, 89 S.Ct. 1021, 21 L.Ed.2d 221 (1969) where some 44 months elapsed pending resolution of the case.

Judge Robinson in Hinton v. United States, 137 U.S.App.D.C. 388, 393, 424 F.2d 876, 881 (1969), took note of our various earlier pronouncements before observing:

The delay here may have been the result of institutional inefficiency, a failure of communication between the different offices of government concerned with appellant.

What was there assumed as a possibility is here an accomplished fact. Counsel appointed to represent Medley at his

---

1. Forcible and Statutory Rape: An Exploration of the Operation and Objectives of the Consent Standard. 62 Yale L.J. 55, 68 (1952). And see cases collected in 31 A.L.R. 3, 1235 and 1267.

preliminary hearing, three weeks after his arrest, had no further connection with the case. A month later, without counsel, Medley was arraigned, entered a plea of not guilty and was released without bond to the custody of the "Bonabond" agency. Although then informed that counsel would be appointed for him, no attorney was named until one year later, following his arrest on a bench warrant after a failure to appear in court. Meanwhile, except for a period when he served a jail term on a misdemeanor charge, he had kept in almost daily communication with Bonabond, or the Bail Agency or both. Both entities had a record of his address, and yet he had received no notice that his presence in court was required. There was no suggestion that Medley sought in any way to invigorate an inert situation. Not unversed in such matters, *compare* United States v. McCray, 140 U.S.App. D.C. 67, 433 F.2d 1173 (1970), he might, of course, have possessed a vague hope of a possible lapse of prosecution interest or a further deterioration of Government testimony, to paraphrase Judge Leventhal's comment in the second *Hedgepeth* case. (See note 2, infra).

When counsel finally entered the case, he moved successfully for psychiatric studies after which a motion to dismiss was argued and denied. Three months later the trial was held. All in all, the record presents a shambles of institutional inefficiency, an almost incredible failure of the communication Judge Robinson mentioned, quoted *supra*.

▮ In light of the discussion presented and the conclusions reached in the cases cited, we have reassessed the record here. Present counsel earnestly argued that if Medley had been represented throughout the first year following his arrest, an attorney "might" have elicited some word from the victim de-

spite her incapacity. Perhaps an attorney "might" have taken some step in aid of Medley. Such elusive speculation offered here on brief is unconvincing in view of the unique background. We discern no prejudice whatever, and it fairly appears that neither did the trial judge with an even better opportunity than we to appraise the live witnesses and to sense the case as a whole. We perceive no error in her denial of the motion to dismiss on the "delay" ground.[2]

We will enter a judgment in accordance with our treatment in Part I of this opinion.

Reversed and remanded with directions.

He admitted convictions of petit larceny in 1949, and again in 1950, housebreaking and larceny in 1954, larceny and assault in 1958, and house-breaking and grand larceny in 1959.

---

2. Preliminarily to trial, Medley testified "* * * I have had quite a few dealings, you know, with the judicial process and during this particular affiliation with the judicial process, the lawyers themselves have always contacted me."