**UNITED STATES of America**

v.

**David E. DOUGLAS a/k/a David D. Mitchell, Appellant.**

**No. 72–2150.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 30, 1973.

Decided Aug. 9, 1974.

As Amended Aug. 13, 1974.

Bazelon, Chief Judge, concurred and filed opinion.

**214**

———◆———

Raymond E. Cahill, Washington, D. C. (appointed by this court) was on the supplemental memorandum filed by appellant.

Earl J. Silbert, U. S. Atty., John A. Terry, Roger M. Adelman and Steven R. Schaars, Asst. U. S. Attys., were on the supplemental memorandum filed by appellee.

Before BAZELON, Chief Judge, and McGOWAN and MacKINNON, Circuit Judges.

MacKINNON, Circuit Judge:

The record now comes before us supplemented following our remand[1] for the taking of additional testimony on the claim that appellant was denied his "right to a speedy . . . trial."[2] Specifically, we requested further details on three points: (1) the circumstances between November 11, 1971 and March 1, 1972 as to the appointment of counsel; (2) the circumstances of the parole revocation proceeding and whether appellant had counsel in those proceedings and (3) the extent of the unavailability of the complaining witness between March 17, 1972 and August 31, 1972 when appellant was tried. We find no error in the trial and affirm the judgment.

I

Appellant was arrested on August 28, 1971 for several alleged offenses. The same day an attorney, Mr. Kapinus, was appointed under the Criminal Justice Act to represent him in the Superior Court and the preliminary hearing was continued until September 2, 1971. On that day the preliminary hearing was held as scheduled and appellant was "Held for action of the Grand Jury." Bond was set at $5,000. The courts at that time were in a transition stage under the District of Columbia Court Reorganization Act (Tr. I, 42) but the United States District Court still had jurisdiction of appellant's alleged offenses.

On November 4, 1971, two months after the preliminary hearing, a four count indictment was returned charging appellant with:

(1) First degree burglary (D.C.Code § 22–1801(a));
(2) Petit larceny (D.C.Code § 22–2202);
(3) Unauthorized use of motor vehicle (D.C.Code § 22–2203);
(4) Grand larceny (D.C.Code § 22–2201).

On November 11, 1971, U. S. Magistrate Burnett appointed Bettie Benjamin

---

1. United States v. Douglas, 160 U.S.App.D.C. 7, 488 F.2d 1331 (1973).

2. U.S.Const. amend. VI.

"counsel to defend" appellant and the case was assigned to Judge Bryant under regular calendar procedures. Miss Benjamin received a notice of her appointment dated November 15, 1971 accompanied by a notice that the arraignment of her client was scheduled for November 19, 1971. Prior to the scheduled arraignment Miss Benjamin went to interview her client. Concerning such event she testified:

Q  Do you recall what happened at that time?

A  At that time I came in and went into the lockup to interview Mr. David Douglas. When I went into the lockup, he asked me where was his attorney. He indicated that he had an attorney who had been appointed to represent him in the Superior Court. And he wanted that attorney to represent him for this matter.

\* \* \* \* \* \*

Q  Did he tell you the name of that attorney?

A  He was unable to fully articulate the name of that attorney, and I did not write it down.

Q  All right. Did you participate in the arraignment itself that was held that day?

A  No. I did not.

Q  Can you explain the circumstances of that?

A  When the matter was called, I represented to Judge Bryant that Mr. Douglas wanted to be represented by the attorney who had represented him in the Superior Court. At that time, as best I can recall, Judge Bryant appointed an attorney name [sic] K-a-p-i-n-u-s to represent the defendant for arraignment only.

Q  That is Mr. Kapinus. Did he, to your recollection represent the defendant at arraignment on November 19th?

A  ·Yes, he did.

Tr. II, 52–53. Mr. Kapinus also testified as to his impressions of the circumstances at the arraignment on November 19, 1971:

A  . . . And as I recall, the arraignment had been concluded. The Court indicated that counsel would be notified, *and I left assuming that I would be appointed to the case* but apparently his other attorney's name appeared on some record and consequently she was brought into the case to follow the proceeding on until the end.

Q  Did you represent Mr. Douglas in any fashion in this case after that day?

A  No.

Tr. III, 86–87 (emphasis added). Mr. Kapinus did, however, represent appellant as his counsel throughout his entire parole revocation proceeding which was then underway and which continued well into 1972. The revocation hearing was held on March 17, 1974, and the attempted revocation of parole was based on the alleged commission of the offenses on August 28th for which appellant was indicted.

Subsequently Miss Benjamin received a notice from the Clerk's office dated February 25, 1972, informing her of a status call of the case on March 1, 1972. (Tr. II, 53) In the interim she had assumed she no longer represented appellant since she had informed the court that appellant "wanted [Kapinus] . . . to represent him for this matter" (Tr. II, 53), and had concluded in line with Kapinus' assumption following the arraignment "that [he] would be appointed to the case" (Tr. III, 87). Nevertheless, Miss Benjamin appeared in court pursuant to the notice, made an oral motion to vacate her appointment and then the court appointed Matthew Black to represent appellant (Tr. II, 53). One possible explanation for not appointing Mr. Kapinus was that he was a possible witness at the trial, since the defense was intoxication and Kapinus had observed appellant's condition early in the morning of August 28th (Tr. I, 42). Thereafter, Mr. Black represented appellant as his trial counsel.

It is significant that the failure of counsel to act for appellant in the inter-

im between the date of his preliminary hearing, his arraignment on the indictment on November 19, 1971, and the status call on March 1, 1972, did not cause any delay in the trial of the case. Obviously, the trial could not have taken place in September or October, even if the defendant had been indicted earlier, because of the status of the judge's calendar. Also, from October 1971 through February 1972 Judge Bryant was engaged in trying the highly important United Mine Workers Election Case (Tr. I, 44–45). As soon as that trial finished the judge promptly conducted a status call on March 3, 1972, continued this case to March 10, 1972, and set the trial for March 17, 1972. This date was agreeable to all parties. No prejudice was claimed up to this point.

However, the case was not tried on March 17th because of the enforced absence of the complaining witness, Miss Kenna, whose apartment had been burglarized. When the U.S. Attorney sought to notify her of the trial date he discovered that she had left Washington for Portland, Oregon, on February 1, 1972, because of a serious accident in her family. Her father had been killed and her mother remained in critical condition for a considerable period of time. The mother's injuries included the loss of an eye, a broken jaw, a broken back and internal injuries. There was no other member of the family to assist in the care of her mother and Miss Kenna also had to wind up her father's business and estate. Such obligations prevented Miss Kenna from returning to work for 8 months. She testified that through April it was impossible to come back (Tr. I, 7–18). She did spend 2 days in Washington in June, which time was completely devoted to getting her belongings, and she did not notify the U.S. Attorney of her presence here. Appellant's counsel, Mr. Black, was also away on vacation from April 21, 1972, to May 15, 1972 (Tr. I, 40).

So with all these complications the parties attempted on June 14, 1972, to fit the case into Judge Bryant's crowded calendar for trial on July 10, 1972 (Tr.

I, 36). This date eventually proved to be unavailable when the judge was called out of the city to attend a meeting of a national judicial committee upon which he served. The committee met from July 8 to July 11, 1972 (Tr. I, 44).

Thereafter, the judge was scheduled for vacation in August, appellant filed a motion to reassign the case, and the judge returned from vacation to conduct the trial on August 31, 1972.

It is apparent from the foregoing that the trial delay, which was not greatly excessive, was initially caused by appellant's confusion of his counsel situation and thereafter by a combination of the heavy calendar of the judge and the necessity of trying prior scheduled cases, the impossibility for a long period of securing the attendance of the complaining witness, the judge's commitment to other official duties, and to a minor extent the absence on vacation of appellant's counsel.

Such facts are insufficient to constitute a denial of one's right to a speedy trial under the standards laid down by Barker v. Wingo, 407 U.S. 514, 531, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). They are clearly insufficient in the absence of any prejudice and we find no prejudice. Appellant did claim that he had "lost contact with his witnesses and potential witness" because of the delay; but at trial he was able to call all witnesses that he had initially named and it is obvious that there is no merit in this portion of his claim.

Appellant also contends that were his trial to have been speedy in fact, he would be serving the sentences in the instant case more nearly concurrent with the sentence imposed in his prior conviction. United States v. Barnes [477 F.2d 450, D.C.D.C.], D.C. Cir. No. 72–1731, decided April 6, 1973. (App.Br. p. 26)

The validity of this contention depends upon his sentence in this case being concurrent with his earlier sentence in 1967 to 8 years for burglary (Tr. March 3, 1973, p. 3). This claim is erroneous, however, because the sentences in this

case (No. 72–2150), while concurrent with those adjudged on each of the four counts of the indictment, were *consecutive* to the prior sentence. The Judgment and Commitment filed November 10, 1972 in Criminal No. 1957–71 (U.S. District Court) provides:

It is adjudged that the defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of

Not less than Two (2) Years nor more than Seven (7) Years on Count 1;

One (1) Year on Count 2;

Not less than Twenty (20) Months nor more than Five (5) Years on Count 3;

Not less than Twenty (20) Months nor more than Five (5) Years on Count 4, said sentences by the counts to run concurrently.

The Judgment and Commitment is consistent with the oral sentence imposed from the bench.[3] Under such circumstances the D.C.Code provides that the sentences imposed run *consecutively* and not concurrently to the 1967 sentence:

A sentence imposed on a person for conviction of an offense shall, unless the court imposing such sentence expressly provides otherwise, run consecutively to any other sentence imposed on such person for conviction of an offense, whether or not the offense (1) arises out of another transaction, or (2) arises out of the same transaction and requires proof of a fact which the other does not. (July 29, 1970, Pub.L. 91–358, § 210(a), title II, 84 Stat. 610.)

D.C.Code § 23–112 (1973).

That the judge intended the sentences on each count in this case to be concurrent with each other and consecutive to the prior burglary sentence, and that appellant so understood the sentences, is apparent from the following colloquy between court and appellant's counsel:

THE COURT: He was sentenced to concurrent sentences, but—

MR. CAHILL: But by the count in your case.

THE COURT: By the count, but not concurrent with the other.

MR. CAHILL: Not concurrent with the other. If it had been concurrent with the other, of course, David would have been eligible for release on February 9th rather than next fall. The problem was, of course, being concurrent by counts and not being concurrent by the two sentences. We had concurrency lost in connection with speedy trial appeal. That is the crux of my problem.

Tr. III, 100–101.

We conclude that appellant had a fair trial and that he was not prejudiced by a denial of any of his constitutional rights.

Affirmed.

BAZELON, Chief Judge (concurring):

I concur in the holding that David Douglas was not denied his right to a speedy trial. However, I cannot agree with the Court's reasoning, believing, as I do, that the Court departs from established precedent in this Circuit and in the process erodes the foundations of the Sixth Amendment guarantee of a speedy trial.

The Court holds that the one year delay in this case has been justified by the reasons advanced by the government. Such a contention can find no support in the reported cases of this Circuit or of the Supreme Court. We have only recently held that a government policy of prosecuting certain "important" cases before other less "important" cases cannot justify delay in the trial of the less

---

3. THE COURT: On Count 1, the Court sentences you to not less than two or more than seven years. On Count 2, the Court sentences you to one year. On Count 3, the Court sentences you to serve not less than twenty months or more than five years. On Count 4, the Court sentences you to serve not less than twenty months or five years. These sentences are to run concurrently. The Court recommends a federal institution for your incarceration.

Tr. Nov. 10, 1972, pp. 4–5.

"important" cases. United States v. Rucker, 150 U.S.App.D.C. 314, 318, 464 F.2d 823, 827 (1972). This is but the logical corollary of the well-settled principle that governmental negligence or over-crowded dockets cannot justify delay in trial.[1] The Supreme Court has quite clearly and recently stated that the government, both courts and prosecutors, have the "primary burden" of assuring that all cases are promptly brought to trial.[2] It follows that the District Court's desire to complete a complicated labor union case and his attendance to other duties cannot justify the delay in Douglas' trial.

The unavailability of the chief prosecution witness can justify some of the delay.[3] However, it is unclear whether that unavailability extended beyond May. The weight of the evidence indicates that the government could have arranged to have Ms. Kenna return to Washington for the trial. In fact, Ms. Kenna did return to Washington for two days in June and stated in the remand hearing that she could have testified for the government if the assistant U.S. Attorney had arranged it with her. Furthermore, while I believe that unavailability of a witness is a valid justification for delay, there are limits to the amount of delay which such unavailability can justify. Here I find that three months of the delay were justified by Ms. Kenna's family problems in Oregon; I am loathe to extend this to six months. We must presume that the government after waiting three months for the witness and having delayed the trial by then for nine months must make the most diligent efforts to produce that witness for trial.

The suggestion in the Court's opinion that Douglas himself is to blame for part of the delay because of his "confusion" as to his "counsel situation" flies in the face of both the facts in this case and the law of this Circuit. Douglas' lack of counsel was caused by certain deficiencies in the system by which counsel are appointed for indigent defendants. We condemned these deficiencies in United States v. Medley, 146 U.S. App.D.C. 396, 452 F.2d 1325 (1971) and yet it would appear that little has been done to correct the situation.[4] Douglas' original court-appointed lawyer, who, by her own admission, had little experience in criminal litigation,[5] apparently felt that Douglas had dismissed her and silently assumed for six months that other counsel had been appointed and was actively representing Douglas. Neither the District Court nor any other governmental personnel notified her that she remained Douglas' attorney after she failed to represent him at his arraignment. Douglas, incarcerated and admittedly an alcoholic, could do little to remedy the situation. He alleges he wrote letters to the District Court and to another attorney protesting the situation. To blame Douglas for this "confusion" is to take an excessively crabbed view of the government's responsibility to provide counsel to indigent defendants. To consider that delay in trial occasioned by this "confusion" is justified is to ignore the principle that the government and

---

1. See, e.g., Barker v. Wingo, 407 U.S. 514, 531, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); United States v. Calloway, 164 U.S.App.D.C. ——, 505 F.2d 311 (1974); United States v. West, 164 U.S.App.D.C. ——, 504 F.2d 253 (1974).

2. Barker v. Wingo, 407 U.S. 514, 529, 92 S. Ct. 2182, 33 L.Ed.2d 101 (1972).

3. Id. at 531, 92 S.Ct. 2182; United States v. Holt, 145 U.S.App.D.C. 185, 189–190, 448 F.2d 1108, 1112–1113, cert. denied, 404 U.S. 942, 92 S.Ct. 292, 30 L.Ed.2d 257 (1971) (Leventhal, J.).

4. See also United States v. West, 164 U.S. App.D.C. ——, 504 F.2d 253 (1974). This delay in obtaining appointed counsel was not the result of "the deliberate pace of the system of safeguards designed to protect the accused," Blunt v. United States, 131 U.S.App. D.C. 306, 310, 404 F.2d 1283, 1287 (1968), cert. denied, 394 U.S. 909, 89 S.Ct. 1021, 22 L.Ed.2d 221 (1969), but was the result of Douglas being "lost in the shuffle," United States v. Dunn, 148 U.S.App.D.C. 91, 97, 459 F.2d 1115, 1121 (1972). See also Hinton v. United States, 137 U.S.App.D.C. 388, 393, 424 F.2d 876, 881 (1969).

5. Tr. on Remand at 55.

not the defendant has the "primary burden" of bringing a case to trial. To do either of these things is to perpetuate and encourage practices which render the system of appointing counsel for indigent defendants fatally defective.[6]

The Court goes on to state that the delay of one year and three days in this case is "not greatly excessive." This statement is directly contradicted by our decision in Hedgepeth v. United States, 124 U.S.App.D.C. 291, 364 F.2d 684 (1966) which held that delays of more than a year are to be considered prima facie evidence of a violation of the right to a speedy trial. If we begin to inch away from the *Hedgepeth* presumption, we will erode the very concept of a working line in speedy trial litigation. I will not concur in such an erosion.

Not content to rest at that, the Court goes on to say that Douglas has suffered no prejudice because of this delay. While I believe that Douglas has shown insufficient prejudice to justify the severe remedy of dismissal of the indictment,[7] I am far less convinced that Douglas suffered no prejudice whatever or that there was not at least the potential for prejudice which under other circumstances might well be sufficient prejudice to justify a dismissal of the indictment. There can be no doubt that if Douglas was incarcerated pending this trial on the basis of another conviction, he can suffer no prejudice to his person by reason of delay in this trial because of that incarceration. However, here Douglas was incarcerated pending trial not directly on the basis of another conviction but rather because his parole on an earlier conviction had been revoked because of the burglary charge for which he was tried below. Douglas was given a parole hearing on that revocation in March of 1972. However, the accused at a parole revocation hearing does not have the full panoply of rights guaranteed at a criminal trial.[8] Thus, the possibility existed that Douglas' parole would be revoked and yet he would be found not guilty on the burglary charge at his full criminal trial. If he was in fact found not guilty at trial, that fact could not fail to impress the parole board and affect his incarceration on the earlier conviction. Indeed, in this case the parole board requested Douglas' attorney to apprise them of the outcome of the trial. It follows that Douglas was to some extent incarcerated pending trial on the basis of the burglary charge for which he was convicted below. That is prejudice to his person, cognizable under the Sixth Amendment.[9] However, in Douglas' case the overwhelming evidence of guilt trivializes this prejudice since Douglas lost little when deprived of the opportunity to clear himself and regain parole.

The Court finds "no merit" in Douglas' claim that his defense was prejudiced by the delay even though he did not have counsel for six months of that period due to the negligence of the authorities responsible for appointing counsel for indigent defendants. This prejudice to Douglas' defense is not directly

---

6. These deficiencies have been noted in United States v. Medley, 146 U.S.App.D.C. 396, 452 F.2d 1325 (1971) and United States v. West, 164 U.S.App.D.C. ——, 504 F.2d 253 (1974).

They represent only recent examples of the failure of the system of appointing counsel for indigent defendants which have come to my attention. We are not presently advised how extensive these practices are.

7. Unjustified delay of a year even coupled with timely assertion of a right to a speedy trial will hardly ever require the draconian remedy of dismissal of the indictment in the absence of substantial prejudice to the accused. *See* United States v. Medley, 146 U.

S.App.D.C. 396, 452 F.2d 1325 (1971); Harling v. United States, 130 U.S.App.D.C. 327, 401 U.S. 392 (1968).

8. *See* Morrissey v. Brewer, 408 U.S. 471, 487–490, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

9. *Cf.* Smith v. Hooey, 393 U.S. 374, 378, 89 S.Ct. 575, 21 L.Ed.2d 607 (1968); United States v. Rucker, 150 U.S.App.D.C. 314, 316, 464 F.2d 823, 825 (1972). These cases also establish that a defendant incarcerated pending trial on another charge or conviction may still be prejudiced by delay of that trial due to the anxiety and concern accompanying public accusation.

related to the delay itself but since it to some extent caused the delay, it can be said to be part of the delay, and hence a prejudice to Douglas' defense cognizable under the Sixth Amendment.[10] This prejudice was minimal in this case since Douglas has not offered even the slightest indication that his defense was retarded in either investigation or preparation by the six month interval. I am, therefore, constrained to uphold the conviction.

Conviction vacated, case remanded for a new trial.

10. *Cf.* United States v. DeCoster, 159 U.S. App.D.C. 326, 487 F.2d 1197 (1973), establishing standards for determining whether a defendant has been denied his or her right to effective assistance of counsel. That right and the right to a speedy trial are both located in the Sixth Amendment and both serve to insure that the prejudice to individuals caused by public accusation of a crime is mitigated by a speedy and fair trial. Delay in trial caused by failure of effective assistance of counsel thus causes in turn prejudice to the accused cognizable under the Sixth Amendment. For a discussion of Sixth Amendment prejudice, see generally, Barker v. Wingo, 407 U.S. 514, 532, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) ; United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) ; Dickey v. Florida, 398 U.S. 30, 41–43, 90 S.Ct. 1564, 26 L.Ed. 2d 26 (1970) (Brennan, J., concurring).