**UNITED STATES of America**

v.

**Ronald HOLT, Appellant.**

**No. 23928.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 15, 1971.

Decided June 28, 1971.

Certiorari Denied Nov. 9, 1971.
See 92 S.Ct. 292.

Leventhal, Circuit Judge, filed opinion.

MacKinnon, Circuit Judge, filed separate opinion.

Fahy, Senior Circuit Judge, dissented and filed opinion.

Mr. Noel H. Thompson, Washington, D. C. (appointed by this court) for appellant.

Mr. John O'B. Clarke, Jr., Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before FAHY, Senior Circuit Judge, and LEVENTHAL and MacKINNON, Circuit Judges.

PER CURIAM:

The Judgment is affirmed.

Judge Fahy and Judge Leventhal agree that under principles pertinent to a claim of denial of speedy trial, appellant has shown a reasonable possibility of significant prejudice; appellant is not foreclosed by failure to raise the issue at an earlier time; and the Government has not provided conclusive justification for delay by advancing later-filed indictments for earlier trial.

Judge Leventhal votes to affirm on indication that a prosecution witness available when case was first set became unavailable after postponement granted defendant for mental examination; this provides countervailing consideration leading to conclusion that trial of other, later-filed cases first is consistent with administration of justice and does not violate constitutional rights.

Judge MacKinnon votes to affirm on the basis that delay was caused primarily by defendant's own conduct which required seven major trials, the absence of any showing of substantial prejudice, defendant's direct responsibility for a minimum of 220 days of the delay, and

the implicit consent to delay and to the trial order that is indicated by defendant's motions for mental examination, severance and continuance.

Judge Fahy dissents on the ground that the protracted delay was not justified and violates the defendant's right to speedy trial.

LEVENTHAL, Circuit Judge:

While facts about this case are traversed exhaustively in Judge MacKinnon's opinion, it is my view that these are the critical facts: The case involves an offense committed March 1, 1967, and an indictment filed April 24, 1967. The case was originally set for trial on October 23, 1967, but was then postponed because of defendant's motion for a mental examination. In November and early December three other indictments were filed against appellant. On December 14, 1967, appellant's motion to set trial in this case for January 5, 1968, was granted. But it was not until February 20, 1968, that he was found competent to stand trial. On that day the case was scheduled for trial on March 4, 1968. However, when that appointed trial day arrived, the case was decertified from the ready calendar at the Government's request.

What the record shows after this point can fairly be called a diligent job by the prosecutor in bringing on the other cases for trial, starting on April 23, 1968, with a trial that ended in mistrial. But in doing so he let the oldest case get older. It does not appear the defendant objected to the order in which the prosecutor brought the cases to trial. But that order of trial was within the prosecutor's discretion. He has the burden of justifying the delay of seventeen months in bringing this case on for trial.

I. *Application of Speedy Trial Principles Where Delay Is Due to Prosecution of Subsequently Arising Cases*

To focus on this case we must first consider the general principles applicable as to speedy trial, and to what extent a defendant's right to a speedy trial in a particular case is affected by the Government's deciding to bring on other cases for trial earlier.

We examined the considerations surrounding the right to a speedy trial in Hedgepeth v. United States, 124 U.S.App.D.C. 291, 294, 364 F.2d 684, 687 (1966) [*Hedgepeth I*]. Time is the most important factor; the longer the delay between arrest and trial the heavier the burden on the Government will be in arguing that the right to a speedy trial has not been abridged. The defense claim has prima facie merit if the lapse between arrest and trial is longer than one year. 124 U.S.App.D.C. at 293, 364 F.2d at 686; Harling v. United States, 130 U.S.App.D.C. 327, 401 F.2d 392 (1968), cert. denied, 393 U.S. 1068, 89 S.Ct. 725, 21 L.Ed.2d 711 (1969). On reviewing the intervening events, however, the court must also balance the other factors to be considered: the reasons for the delay, the diligence vel non of the prosecutor, court, and defense counsel, "and the likelihood, or at least reasonable possibility, that defendant has been prejudiced by the delay." [1]

*Issue of Possibility of Prejudice*

It must be recognized that when the delay is caused by the time required for trial of other cases, there is less possibility of "prejudice to the person" than in other cases. In the instant case, appellant's detention stemmed from his arrests on other charges. And the anxiety of overhanging prosecutions was then necessarily with him, for as long as it took to dispose of all pending prosecutions.

There remains, however, the second aspect of the dual protection provided by the Sixth Amendment, the protection against "prejudice to a defendant's defense." Hedgepeth v. United States, 125 U.S.App.D.C. 19, 22, 365 F.2d 952, 955 (1966) [*Hedgepeth II*].

---

1. Hedgepeth v. United States, 124 U.S.App.D.C. 291, 294, 364 F.2d 684, 687 (1966). [Hedgepeth I].

It is at this point that I part ways with Judge MacKinnon. His opinion states that delay "alone is not dispositive; there must be some resulting prejudice." (p. 1118, infra.) But the rule does not require that defendant show prejudice; as stated above, defendant must show only a "reasonable possibility" that his defense has been prejudiced by the delay.[2]

In this case, a possibility of prejudice arises from the combination of delay and the difficulty of establishing the defense version of the clothes worn by defendant on the critical date of the offense.

The defendant testified that he could remember the pants he was wearing on March 2 but not the pants he was wearing on March 1. He remembers the pants on March 2 because on that date the officer told him at No. 1 Precinct: "Yeah, you still got on the same pants." (Tr. 175). The transcript continues: Q: "Didn't that cause you to think back to what you had been wearing the previous day? A: Well, it didn't cause me to do nothing."

One might say this put the defendant on "notice." But it is not the unsophisticated defendant, plunged into a situation of perhaps paralyzing anxiety, who is charged with preparing the defense. That is the task of his counsel, and she may not have been apprised of the officer's colloquy in early conferences. If the trial had been held promptly she would have had the benefit of more recent recall by witnesses other than defendant, and perhaps a refreshment of recollection on the part of defendant.

There is another possibility of prejudice even assuming that if the instant case were tried first it would have resulted in conviction. Defendant might have fared better in terms of disposition if he had more promptly received the Youth Corrections Act sentence (ultimately ordered in this case). There might well have been a reasoned decision by the prosecutor to nolle, or at least hold up, the other more serious prosecutions, perhaps with a defense stipulation, until it was at least seen whether the YCA rehabilitation was effective. The fact that appellant committed other crimes in 1967 before he had the opportunity for YCA rehabilitation would not necessarily mean he could not be reformed with proper treatment.

It cannot be said that there is no reasonable possibility of prejudice to the defense from this denial of prompt trial.[3]

*Defense Failure To Raise Objection*

Another thread running through Judge MacKinnon's opinion ascribes significance to the fact that defendant did not raise an objection to being tried last on Crim. 471–67. He asserts at one point that defendant's failure to raise this objection was a "tactical decision."

The record does not establish this conclusion. All defense counsel said was because of the possibility that the Government might dismiss the case she did not move for a transcript of the preliminary hearing. But there is nothing to indicate that she failed to make a demand for trial of this case because

2. Hedgepeth I, *supra*, 124 U.S.App.D.C. at 294, 364 F.2d at 687; Hedgepeth v. United States, 125 U.S.App.D.C. 19, 21, 365 F.2d 952, 954 (1966); Harling v. United States, 130 U.S.App.D.C. 327, 330, 401 F.2d 392, 395 (1968), cert. denied, 393 U.S. 1068, 89 S.Ct. 725, 21 L.Ed.2d 711 (1969) ("Even a slight showing of possible prejudice, inflamed by the fact of long and unjustified delay, might have entitled defendant to relief from continued jeopardy."); Hinton v. United States, 137 U.S.App.D.C. 388, 392, 394, 424 F.2d 876, 880, 882 (1969) ("significant possibility of prejudice to

the defense"); Coleman v. United States, 142 U.S.App.D.C. 150, 442 F.2d 150, (decided March 8, 1971) (At 408, 442 F.2d at 156: "While we are satisfied that [the] testimony was sufficient to send this case to the jury, we are not so sanguine as is the Government that it demonstrates guilt so unequivocally that no occasion for prejudice due to the lengthy delay could have arisen.")

3. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

she thought that it would enhance the likelihood of dismissal by the Government.

Indeed, if she had sought and the court had ordered a speedy trial of this case in the spring of 1968, the fact that complainant had moved to Germany (on December 17, 1967) might very well have led the Government to nolle this case, rather than make arrangements for transportation of the victim from Germany, and to expect to prevail on the other criminal charges then pending.

More important, however, is the principle accepted in this jurisdiction, that at least in a case where delay has run for more than a year, we do not require that the defendant make a demand for a speedy trial. We hold that the burden of moving promptly is on the Government, and that no "waiver" is to be inferred from lack of demand by defense counsel. *See, e. g.*, Coleman v. United States, 142 U.S.App.D.C. 402, 442 F.2d 150 (decided March 8, 1971).

This is the approach recommended by the American Bar Association Project on Minimum Standards for Criminal Justice,[4] a report recently cited with approval in another connection by Chief Justice Burger.[5] The Commentary to the *Standards* notes that the cases are split as to whether the defendant must make a demand for a speedy trial, finds that "the demand requirement is inconsistent with the public interest in prompt disposition of criminal cases," and concludes that the better rule is that such demand is not required in order to be able to present the claim

of denial of a speedy trial by a pre-trial motion to dismiss.[6]

In our jurisdiction it is peculiarly appropriate to hold the Government to the obligation of arranging a speedy trial. At the time of the events in this case, the District Court had adopted a rule that virtually left it to the prosecutor to determine which criminal cases to try and in what order to bring them up.[7] That authority given to the prosecutor entailed a commensurate responsibility.

On December 14, 1967, appellant moved to set this trial for January 5, 1968. This motion was granted. The case was later set for trial on March 4, 1968. At that time the case was decertified from the ready calendar *at the Government's request*. There is nothing on the record to show that the defendant was in any way joining in this request, or was even pleased by it. Defense counsel noted that she did not order the preliminary hearing transcript earlier because "there was a strong indication that the case would not go to trial." [8] But that was the Government's indication, and she merely accepted the consequence and gauged her work and time accordingly. It cannot remotely be stretched into an indication of an intentional, tactical acquiescence in delay.

■ The analysis of Judge Mac-Kinnon's opinion rests on the assumption that defendant had some duty to make a request for trial of this case first. I agree with Judge Fahy in rejecting that premise.

---

4. Standards Relating to Speedy Trial § 2.2 (Approved Draft 1968).

5. Dickey v. Florida, 398 U.S. 30, 37 n. 7, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970).

6. ABA Standards, *supra*, note 4, Commentary to § 2.2 at 17.

7. District Court Local Rule 87(h) and (j), quoted in Harling v. United States, *supra* note 2, 130 U.S.App.D.C. at 329 n. 3, 401 F.2d at 394 n. 3. The Local Rule was revised on August 1, 1968; the substantially similar Ready Calendar pro-

visions were placed under Rule 87(g) and (j).

Rule 87 was suspended on September 10, 1969, when the former master calendar system was replaced by the individual calendaring system now in use in the District Court. *See* Local Rule 77, adopted May 1, 1970. Appellant's trial in the instant case was on September 3–5, 1969, so the trial and all delays incident thereto took place under the old rules.

8. Tr. 8.

## II. Countervailing Circumstances Leading To Affirmance In This Case

The first delay of note introduced into the trial of this case was appellant's motion for a mental examination on October 19, 1967. After appellant was found competent to stand trial, the case was scheduled for trial on March 4, 1968. On that day, the case was decertified from the ready calendar at the Government's request. No reasons for this request appear on the record. The Government's reason for delay is material, under *Hedgepeth*; it might normally be appropriate to order a remand in order to ascertain what the Government's reasons were and appraise their significance. As I have already pointed out, if the delay was solely to try other cases first that is not good enough in and of itself, as the trial court assumed. But it does have some bearing on the totality of circumstances. The fact is that defendant's actual incarceration during the long period of delay after March 4, 1968, was due to other charges not related to this case. And while there are important reasons for assuring a speedy trial even when the defendant is not incarcerated, some of these are either inapplicable, or less significant, when the Government is actually proceeding on other trials. Thus, we do not have the picture of a defendant who is waiting around, uncertain of whether he will be brought to trial. This defendant was being brought to trial. And we do not have the fear that the Government, whether on purpose or by negligence, has more or less shoved aside the plight of a particular defendant. The Government was very must aware of this defendant and was prosecuting vigorously.

There is still the reasonable possibility of prejudice from the delay in this case. As a partial offset I should note that I read the record as indicating it was likely that no prejudice in fact occurred. This is still not decisive, unless the lack of prejudice is so manifest as to call for the *Chapman-Harrington* Rule.

The crucial element that for me gives this case a complexion requiring rejection of plaintiff's speedy trial claim is that the Government's complaining witness was in the United States and available on October 23, 1967, when the case was first set for trial.

It was defendant who moved for postponement of that trial date until January 5, 1968, in order to have a mental examination. As already noted he was not found competent to stand trial until February 20, 1968. But on December 17, 1967, prior to the earliest date on which defendant could have been ready for trial, the complaining witness had moved to Germany to join her soldier husband stationed there on Army orders. (Tr. 55).

Let us assume the Government had no automatic control of the ready calendar, and that it had to apply to the trial judge on March 4, 1968, and make a showing in support of its request that the case be decertified from the ready calendar. If the Government had informed the trial judge of the removal of the complaining witness to Germany, it is highly unlikely that the judge would have ruled the request unreasonable. In this situation, where the Government has good reason for a continuance it can only be offset if defendant makes a showing of prejudice or anticipated prejudice.

The matter before us is difficult because the Government, having control of the calendar, arranged a postponement, without having to make a request for postponement. I am considering what would have been the result if the Government had not had the power to control the calendar and had presented such a request. But in these circumstances, with the transfer of the complaining witness during the delay requested by the defendant constituting some cause on the Government's part, and the possibility that the case could be rendered academic by a willingness to nolle prosse in the event of a conviction in another pending prosecution, it seems consonant with the administration of justice to defer the trial, notwithstanding a possibility of prejudice, unless the defense provides some indication of likelihood of preju-

dice. There being some justification for delay on the part of the Government, some showing on the part of the defense is not an unreasonable requirement.

Ordinarily this analysis would lead me to a remand in order to focus on and assess both the Government's reason for the postponement sought in March, 1968, and the extent of possible and likely prejudice to defendant. The fact that the trial court erred in the reason he assigned for rejecting the speedy trial contention does not mean another reason may not be available. I am content in this case to stay with my own appraisal that the balance would likely be assessed against defendant, and feel that a remand proceeding would require a further use of the limited resources of the judiciary that is not appropriate or necessary in the circumstances of this case.

The reason for my not insisting on a remand is this: After appellant was sentenced under the Youth Corrections Act for the offense in this case, he received a subseqent sentence in May, 1970, for another conviction unrelated to this case, which calls for detention in the adult prison, and he was moved to the adult prison.[9]

In any real sense, he is not now serving a sentence under the Youth Corrections Act, which requires that committed youth offenders "shall be segregated from other offenders." 18 U.S.C. § 5011. The Government memorandum further advises that since appellant's adult sentence is longer than his youth sentence, his case would be considered by the D.C. Parole Board not to call for use of its Youth Parole Service section and its supervision, but would be handled by the regular adult parole section. Since every aspect of appellant's detention is pursuant to his conviction of another crime, I think it appropriate to dispose of this case on the record before us, and a fair appraisal of the probabilities, rather than to require a remand. Accordingly I am voting to affirm the conviction.

MacKINNON, Circuit Judge:

Appellant was charged by a three count indictment with (1) assault with intent to commit rape, (2) assault with a dangerous weapon and (3) carrying a pistol without a license. On this appeal he complains principally that he was denied his constitutional right to a speedy trial by an interval of thirty months between his arrest and his trial on such offenses. Appellant was released on bail until he was arrested on numerous other offenses and was represented in all cases by the same competent counsel throughout. The long delay is fully explained by the normal wait before trial, by the time required for a mental examination requested by appellant, by the time required to try appellant six times in the District on other charges that were more serious, by the time involved in considering necessary motions, by continuances granted at appellant's request and by a trial order which placed this case at the bottom and which order appellant did not oppose. I would affirm the convictions on such grounds.

I

The offense here charged was allegedly committed on March 1, 1967. Appellant was arrested the next day and an indictment was returned on April 24, 1967. Appellant was promptly arraigned, his attorney entered her appearance and for all that appears the Government and accused were waiting for the case to be reached for trial in its normal order. However, while appellant was free on bail on the instant indictment, on September 28, 1967 he was arrested on a number of other more aggravated charges involving either robberies or sex assaults for which he was subsequently indicted. Consequently on October 19, 1967, appellant's *counsel* moved to commit him for a mental examination, which was not completed until February 20, 1968 when the court found him to be competent to stand trial. The foregoing events explain one year of the delay with-

9. As revealed by a supplemental Government memorandum filed January 25, 1971, at our request.

out any culpability attaching to the Government.

The next 18 months and 14 days were used up by six criminal trials on other charges, by some continuances that were necessary and which were either requested by appellant or were not opposed by him.[1] Thus the real

## APPENDIX

| Date | Event |
|---|---|

1. The following is a chronological summary of the progress of the case as set forth in the Government brief:

| Date | Event |
|---|---|
| March 1, 1967 | Assault committed. |
| *March 2, 1967 | Appellant arrested. |
| April 24, 1967 | Indictment filed in the instant case (Criminal No. 471–67). |
| May 5, 1967 | Arraignment; plea not guilty. |
| May 8, 1967 | Attorney Jean F. Dwyer enters appearance. |
| October 19, 1967 | Appellant moves for mental examination. |
| October 23, 1967 | Case had been set for trial on this date; decertified from ready calendar. |
| November 6, 1967 | Indictment filed in Criminal No. 1409–67. |
| November 20, 1967 | Indictment filed in Criminal No. 1447–67. |
| December 4, 1967 | Indictment filed in Criminal No. 1506–67. |
| December 14, 1967 | Appellant moves to set trial in Criminal No. 471–67 for January 5, 1968; granted. |
| February 20, 1968 | Appellant found competent to stand trial; case scheduled for trial on March 4, 1968. |
| March 4, 1968 | Case decertified from ready calendar at Government's request. |
| April 23–26, 1968 | Trial in Criminal No. 1506–67; jury unable to agree on verdict; mistrial. |
| April 26, 1968 | Appellant moves to sever counts of Criminal No. 1409–67. |
| May 22, 1968 | Appellant moves to dismiss indictment in Criminal No. 1447–67; motion granted. |
| May 28, 1968 | Court grants severance motion in Criminal No. 1409–67; counts severed into three cases. |
| June 28, 1968 | Government moves to have court reconsider order in Criminal No. 1447–67; motion denied. |
| July 10, 1968 | Appellant and Government jointly move to continue Criminal No. 1409–67 until September 4. |
| September 5–10, 1968 | Trial in Criminal No. 1409–67; jury unable to agree on verdict; mistrial. |
| October 3–9, 1968 | Trial in Criminal No. 1409–67; verdict not guilty on counts 5 and 6. |
| October 17, 1968 | Appellant moves to continue trial in Criminal No. 1506–67 until November 18, 1968. |
| November 26, 1968 | Part of transcript of April mistrial in Criminal No. 1506–67 filed. |
| December 13, 1968 | Remainder of transcript of April mistrial in Criminal No. 1506–67 filed. |
| January 15–29, 1969 | Trial in Criminal No. 1506–67; verdict not guilty. |
| February 7, 1969 | Work release granted in Criminal No. 471–67. |
| February 26, 1969 | Criminal No. 471–67 called; Government given 30 days to be ready or case to be dismissed. |
| March 17–19, 1969 | Trial in Criminal No. 1409–67; verdict not guilty on counts 3 and 4. |
| April 17, 1969 | Criminal No. 471–67 placed on ready calendar and set for trial on April 29; appellant requested March 1967 preliminary hearing transcript. |
| April 28, 1969 | Criminal No. 471–67 continued until September 3, 1969, at appellant's request to obtain transcript of preliminary hearing. |
| May 7, 1969 | Appellant requests continuance in Criminal No. 1409–67 until June 2, 1969. |

question here is whether appellant was denied his rights to speedy *trials* when he was tried seven times in 18 months and 14 days.

### The First Trial—April 23–26, 1968

To be more specific as to the events during this period: Appellant's motion of December 14, 1967 to have the case set for trial on January 5, 1968 was granted, but the trial did not take place because it was not until February 20, 1968 that he was determined to be competent to stand trial. The case was then set for trial on March 4, 1968 but on that date it was decertified from the ready calendar to make way for the trial of Criminal No. 1506–67 (robbery, rape, assault with intent to commit rape, assault with a dangerous weapon) which involved more serious offenses. Following *the trial of appellant on Criminal No. 1506–67* on April 23–26, 1968, appellant on April 26, 1968 moved for separate trials of the charges in Criminal No. 1409–67 which involved six counts charging assault with a dangerous weapon (gun) and robbery. On May 28, 1968 the court granted the severance motion. The result of this was to require three separate trials and to cause further delay. Appellant, however, was entitled to have the cases tried separately and no blame is assessed against appellant or the Government for this circumstance which contributed materially to the delay in reaching Criminal No. 471–61 (the instant case).

### The Second Trial—September 5–10, 1968

In the meantime the trial court had granted a motion to dismiss the indictment in Criminal No. 1447–67 and the Government had requested reconsideration of such order. This was denied on June 28, 1968 and then on July 10, 1968 appellant and the Government *jointly* moved to continue the trial in Criminal No. 1409–67 (apparently the case to be tried next) until September 4, 1968. *This case was tried over five days from September 5th to the 10th, 1968,* and resulted in a mistrial when the jury were unable to agree.

### The Third Trial—October 3–9, 1968

The case (No. 1409–67) was promptly retried from October 3rd to the 9th, 1968.

### The Fourth Trial—January 15–29, 1969

Next, appellant moved on October 17, 1968 to continue the trial in Criminal No. 1506–67 until November 18, 1968. However, the transcript of the prior trial was not filed until December 13, 1968 and the *retrial accordingly did not occur until the middle of the next month, i. e., from January 15th to the 29th, 1969.* Following the not guilty verdict in the retrial of Criminal No. 1506–67, appellant on February 7, 1969 was given a work release in Criminal No. 471–67 (the instant case) and the case was called on February 26, 1969, when the

June 4, 1969 _____ Appellant and Government jointly move for continuance in Criminal No. 1409–67 until June 17, 1969.

June 9, 1969 _____ Appellant arrested on charges of rape while on work release (see letter dated June 17, 1969).

June 10, 1969 _____ Work release revoked.

July 17, 1969 _____ Government moves to continue Criminal No. 1409–67 until July 24, 1969.

July 28–29, 1969 _____ Trial in Criminal No. 1409–67; verdict not guilty on counts 1 and 2.

August 12, 1969 _____ Indictment filed in Criminal No. 1288–69.

September 3–5, 1969 ____ Trial in Criminal No. 471–67.

* Appellant's counsel talked to his alibi witness on March 3, 1967 and to appellant's mother two or three days after the offense (Tr. 135).

Government was given thirty days to find out if they could assure the presence of the complaining witness so the case could be placed on the ready calendar in April under pain of dismissing the case.[2]

### The Fifth Trial—March 17-19, 1969

During March 17-19, 1969, appellant was tried on Criminal No. 1409-67, and apparently the Government gave satisfactory assurances that the complaining witness would be produced because Criminal No. 471-67 was placed on the ready calendar on April 7, 1969 and was set for trial on April 29. It is apparent that the Government was ready at this time for trial in Criminal No. 471-67 but the case never came to trial until four months and nineteen days later because the court on April 30 granted appellant's motion (so the order states) to continue the instant case until September 3, 1969 in order to permit him to obtain a transcript of the 1967 preliminary hearing.[3] Appellant's counsel had not requested this earlier because she had half way expected the results in the other trials to bring about a dismissal of the charges in Criminal No. 471-67.[4] The granting of this motion by appellant fully accounts for the delay until September. The motion was made by appellant but the Government did not object. It should be noted that any continuance of the trial date beyond April 29th created difficulties for the complaining witness as she was then temporarily living in Germany and was expecting the birth of her second child in July. Appellant's trial counsel stated that she had only requested a continuance to May 15th and so the additional continuance may have been due to the incapacity of the complaining witness.

### The Sixth Trial—July 28-29, 1969

It is also important to note that the Government was not negligent in the intervening period. Appellant on May 6, 1969 had requested and been granted a continuance in Criminal No. 1409-67 until June 17, 1969. This trial was continued at the Government's request and was held on July 28-29, 1969. Meantime, on June 9, 1969, while appellant was out of jail on work release, he was arrested on another alleged rape and his work release was terminated.[5]

### The Seventh Trial—September 3-5, 1969

Finally, the end was reached on September 3, 1969 when appellant's trial began on the instant charges of assault with intent to commit rape, but not before he had moved for the first time to have the indictment dismissed for failure

---

2. Judge Gesell's order filed February 26, 1969 provided:

    Unless the Government gives written assurance within one month that it can produce the complaining witness for trial in April, this case will be dismissed.

    If there is such written assurance then the case will be put on the ready calendar in April.

3. The court's order filed April 30, 1969 provided:

    This matter came before the Court on the defendant's motion for a continuance of the trial date now set for April 29, 1969, and the Government having no objection to the said motion, it is hereby this 28 day of April 1969,

    ORDERED that the case shall be continued to September 3, 1969, and it is

FURTHER ORDERED that there shall be no further continuances granted to either party. (Emphasis added).

The order was signed by the "Attorney for the Defendant" and by the "Assistant United States Attorney."

4. See page 9, infra.

5. The court order revoking his work release filed on June 10, 1969 recited the following:

    It further appearing that the defendant failed to comply with the conditions of his release in that he was arrested at 9:15 A.M. on June 9, 1969, on a charge of rape and attempted robbery, which occurred on that day subsequent to his release at 7 A.M. from the Work Release Center (CGS 20779-69-C).

of the Government to grant a speedy trial. The motion was denied and he was convicted.

### The Eighth and Ninth Trials— February-March, 1970

I also take judicial notice of Criminal Case No. 24,403, United States v. Ronald Holt, a pending appeal in this court. The docket entries and the transcript in that case disclose that appellant, after a mistrial which began on February 5, 1970, was tried again, beginning on March 19, 1970, and convicted of first degree burglary, sodomy and assault with intent to commit rape.

### II

All persons charged with criminal offenses are guaranteed by the Sixth Amendment of the U.S. Constitution that they " * * * shall enjoy the right to a speedy * * * trial." The Supreme Court has stated:

> This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself.

United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966).

> The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.

Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950 (1905).

In Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970), the Supreme Court dismissed a seven-year-old indictment where the accused had petitioned the court three times for a prompt trial, was always available for trial, demonstrated prejudice and the delay was exclusively for the benefit of the state. In so deciding, Chief Justice Burger remarked for the Court:

> The right to a speedy trial is not a theoretical or abstract right but one rooted in hard reality on the need to have charges promptly exposed. If the case for the prosecution calls on the accused to meet charges rather than rest on the infirmities of the prosecution's case, as is the defendant's right, the time to meet them is when the case is fresh. Stale claims have never been favored by the law, and far less so in criminal cases. Although a great many accused persons seek to put off the confrontation as long as possible, the right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial. This is brought sharply into focus when, as here, the accused presses for an early confrontation with his accusers and with the State. Crowded dockets, the lack of judges or lawyers, and other factors no doubt make some delays inevitable. Here, however, no valid reason for the delay existed; it was exclusively for the convenience of the State. On this record the delay with its consequent prejudice is intolerable as a matter of fact and impermissible as a matter of law.

398 U.S. at 37–38, 90 S.Ct. at 1568–1569.[6]

▮ We have also previously set forth the general principles by which courts determine whether the constitutional right of an accused to a speedy trial has been denied:

> [T]he question whether there has been denial of the right to a speedy trial depends on the circumstances of the case, and requires consideration of the length of the delay; reasons for the

---

6. Other recent Supreme Court cases involving the speedy trial guarantee are Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969) ; Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967) ; United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966).

delay; diligence of prosecutor, court and defense counsel; and reasonable possibility of prejudice from the delay. Hedgepeth v. United States, 125 U.S.App. D.C. 19, 21, 365 F.2d 952, 954 (1966). Time alone is not dispositive; there must be some resulting prejudice. Hedgepeth v. United States, 124 U.S.App. D.C. 291, 294, 364 F.2d 684, 687 (1966). In Harling v. United States, 130 U.S. App.D.C. 327, 401 F.2d 392 (1968), cert. denied, 393 U.S. 1068, 89 S.Ct. 725, 21 L. Ed.2d 711 (1969), we held that a delay of nearly two years did not violate the constitutional guarantee since the defendant for most of the time was free on bail, and there was no claim that the defense was in any way impaired or that any proof was lost. However in Coleman v. United States, 142 U.S.App.D.C. 150, 442 F.2d 150 (decided March 8, 1971), we found a denial of a constitutional right in a 20-month delay where the accused was incarcerated in Maryland and available for trial.[7]

Whether appellant was denied his right to a speedy trial by the 30-month interval here between arrest and trial requires an analysis of all the factors that caused such result. In making such analysis at the outset it is recognized that this question cannot be considered as though appellant was only charged with one offense. In addition to the instant indictment he was actually charged in three indictments with five separate and additional offenses that eventually required five substantial trials in the ten months and twenty-seven days between April 23, 1968 and March 17, 1969 and two more trials in the five months and sixteen days up to September 3, 1969. In all, seven trials were required. The 30-month delay is analyzed by looking at it in three segments.

(I) *The period between March 2, 1967 and February 20, 1968*

A period of 11 months and 18 days elapsed from his arrest on March 2, 1967 until February 20, 1968 when he was found to be competent to stand trial. This period was absorbed by his indictment on this offense, by the normal lapse of time waiting for the cause to be reached on the trial calendar, by the delay incident to his indictment on all the other offenses, and by the delay attendant to his mental examination and competency hearing. Since the trials could not start until he was found to be competent, and since it was appellant who made the motion for the mental examination, this period of delay is satisfactorily explained and is not unreasonable.

(II) *The period between February 20, 1968 and March 17, 1969*

Promptly after appellant on February 20, 1968 was found competent to stand trial the Government set Criminal No. 1506–67 for trial, and that trial began on April 23, 1968. From that date until March 17, 1969, (10 months and 22 days), as noted above, there were five separate trials. These were major trials which consumed a total of 29 trial days. During this period some court time was also expended considering appellant's motions to sever, to continue, to dismiss and the Government's motion to reconsider a dis-

---

7. *Coleman* is distinguishable. It involved an indictment for robbery which was dismissed because of a delay of 21 months (626 days) between his arrest and the hearing by the trial court on the motion to dismiss for lack of a speedy trial. Following his indictment on the D.C. charge on August 15, 1966, Coleman was present in the District until October 25, 1966 and thereafter he was confined by the Maryland authorities. During the period of his confinement in Maryland the D.C. authorities knew where he was and he was at all times available for trial on the D.C. charge through use of a writ of *habeas corpus ad prosequendum*. Assuming that such availability for trial is chargeable against the Government, notwithstanding that the accused was a fugitive from the District, that he had forfeited his bail when he failed to appear as required and that a bench warrant had been issued for his arrest, the vital points which distinguish it from this case is that *Coleman* only involved one trial and not seven and the accused thus did not personally cause most of the delay by the necessity of trying him for such other offenses and by his motions for severance and continuance.

missal of one of the indictments. The average disposal time during this period (II) was about 65 days for each case. To have forced appellant to a speedier trial schedule would have been oppressive. He was represented by the same counsel in all the cases and she obviously needed some time between trials to investigate and prepare for the next trial. It was also necessary to delay the trial of every case at least into the next month following the trial of any case in order to provide an untainted jury panel. In addition, it is noted that appellant never made any objection to the trial schedule. No culpable delay is adjudged because of such circumstances.

(III) *The period between March 19, 1969 and September 3, 1969*

The third period runs from March 19, 1969, when the trial of Criminal No. 1409–67 was finished, to September 3, 1969 when the trial began of the case that is the subject of this appeal. As described in the forepart of this opinion, the Government had been ready to go to trial on this case (Criminal No. 471–67) the very next month following the trial on Criminal No. 1409–67 which was completed on March 19, 1969. To this end on April 17, 1969, the Government placed this case on the ready calendar for trial on April 29, 1969. However, on April 28, 1969, the case was continued until September 3, 1969 *upon motion of appellant* in order to permit him to obtain a transcript of the preliminary hearing. As previously stated, the continuance beyond

May 15th may have been due to the pregnancy of the complaining witness. Appellant's counsel stated:

> The reason that the preliminary hearing transcript was not ordered was that there was a strong indication that the case would not go to trial.

Tr. 8.

From all the foregoing it is significant that appellant requested the competency hearing, requested several continuances, made the motion which resulted in three cases being tried separately and did not oppose the order in which the cases were tried. What is also apparent, from the absence of any claim that appellant objected to the trial order, and from the reason counsel gave for not ordering the transcript of the preliminary hearing earlier, is that appellant had been hoping the Government would ask for the dismissal of No. 471–67 if there were convictions on the other offenses. There were sound reasons for appellant to consider that No. 471–67 might be dismissed since the other indictments involved more serious or more aggravated offenses. The Government was also justified, especially when appellant did not object, in giving first trial preference to the more serious charges since all the offenses were allegedly committed within a few months of each other. And since there were sound reasons for the trial schedule that was followed, and he was not in any way prejudiced by the trial order, we cannot reward appellant by dismissing a case that he raised no objection to being tried last after six prior trials.[8]  Hedgepeth v.

8. It seems obvious that this was a tactical decision. Appellant's lawyer is extremely competent and experienced in criminal law and, as her motions for trial and delay indicated, she was thoroughly familiar with the method to be followed to secure an immediate trial on this case had she desired it. On December 14, 1967 she moved to set the case for trial on January 5, 1968. It was scheduled for trial on March 4, 1968 and the record does not indicate any objection by appellant when it was decertified from the ready calendar on the Government's request on March 4, 1968. She also indicated that she did not take steps to prepare this case because she considered it a strong possibility that the Government might dismiss it (Tr. 8). This could only have been based on the possibility that appellant might be convicted on some of the other more serious charges and receive a substantial sentence that would exceed whatever sentence might result from a guilty verdict on this charge. It also goes without saying that if counsel was not prepared to try the case on April 28, 1969, when she requested a continuance to obtain a transcript, she was not prepared to try the case on March 4, 1968, when the case was decertified. In addition, when appellant's counsel made

United States, 124 U.S.App.D.C. 291, 364 F.2d 684 (1966); (Raymond) Smith v. United States, 118 U.S.App.D.C. 38, 331 F.2d 784 (*en banc*, 1964); (George) Smith v. United States, 135 U.S.App.D.C. 284, 418 F.2d 1120 (1969).

It should also be noted that appellant only suffered minimal confinement *in this case*, actually only 50 days. Appellant was actually confined on three separate occasions which are indicated in the margin.[9] The first confinement was from March 2, 1967 until March 16, 1967 when he was confined for 14 days on the charges made by the indictment in this case.

On March 16, 1967 he was released on his $1,000 personal bond. He continued free on bond until September 28, 1967 when he was arrested a second time as the suspect in a number of other offenses involving alleged robbery and rape. He continued in confinement *on these other* charges until February 12, 1969 [10] when

her various motions for mental examination, severance and for continuances of the trial settings, she implicitly consented to delaying the trial of this case.

9. Appellant was confined as follows:

| | I | Period of Confinement |
|---|---|---|
| * Arrested | March 2, 1967 | |
| Released on $1,000 personal bond | March 16, 1967 | 14 days |
| Indicted | April 24, 1967 | |
| Arraigned | May 4, 1967 | |
| | II | |
| * Arrested on other offenses | Sept. 28, 1967 | |
| Appellant's attorney moved to commit him for mental examination | Oct. 19, 1967 | |
| Determined to be competent | Feb. 20, 1968 | |
| After trial of other cases, work release granted in * No. 471–67 | Feb. 12, 1969 | 502 days |
| | III | |
| Free on work release | | |
| * Arrested on rape charge and attempted robbery and work release revoked | June 10, 1969 | |
| * Confined until trial | Sept. 3, 1969 | 85 days |

10. On February 7, 1969 the Government filed an opposition to appellant's motion for release on personal recognizance stating, *inter alia:*

Defendant was originally released on $1,000 bond in Criminal No. 471–67 in March, 1967, and was required to live at 1109 19th Street, N.E. While he was free, a series of about 15 pistol-point Rapes and Robberies of women occurred in the vicinity of 12th Place, S.E. In September, 1967, the defendant was identified by six women as the perpetrator of attacks upon them in that area. He was discovered to have been living there some time at 2605 12th Place, S.E., without having made a report thereof to the authorities. He was arrested and held without bond on September 28, 1967.

Since that time defendant has been through Saint Elizabeth's Hospital and has been tried four times, two trials resulting in Hung Juries and two in Acquittal. One Rape case was dismissed by Judge Waddy when the complaining witness failed to appear because she had been permitted by the prosecution to go out and seek a job on the day the case was called to trial. Defendant still has three cases, two separate Robberies of women at pistol-point and one Assault with Intent to Rape remaining to be tried.

when he was granted a work release in this case.

Thereafter he was free on work release until June 10, 1969 when he was arrested on another rape charge and confined for a third time. This confinement continued until September 3, 1969 (85 days) when he was tried and convicted of this offense. During this period he was only confined *on this case* from the end of the trial on No. 1409–67 which occurred on June 29, 1969 until September 3, 1969 when the trial began on No. 471–67. Thus most of his incarceration was on *other offenses*.

Appellant also directly caused total delay of 284 days (or 220 days if we exclude the 64 days from May 15, 1969 to September 3, 1969) through motions for continuances.[11] These occurred in the two periods (II and III) between February 20, 1968 and September 3, 1969, a total of 560 days. During these two periods (II and III) appellant was tried seven times, with an average disposal time of 80 days a case. However, since 284 (or 220) days were not attributal to the Government, it means that the seven cases were disposed of in 276 (or 336) days that the Government should account for although many factors which caused delay during this period were not for its exclusive benefit. This figure is further reduced by the 29 actual days of trial to 247 (or 307) days. This would leave an average of 41 (or 49) days *between* trials of which 29 (or 35) would be working days (exclusive of weekends). It is submitted that disposing of seven cases involving major trials at that rate does not involve any unreasonable delay. After all, appellant did have to be tried on *seven* cases, not just one. And these trials required an untainted jury and both defense counsel and the Government required some time between trials for preparation.[12]

11.

| Motion by | Period of delay | Length of delay |
|---|---|---|
| (1) Jointly by appellant and U. S. | 7/10/68 to 9/4/68 | 55 days |
| (2) Appellant | 10/17/68 to 11/18/68 | 32 days |
| (3) | Transcript requirement extends delay in (2) to Jan. 15, 1969 | 58 days |
| (4) Appellant | 4/29/69 to 9/3/69 | 139 days |
| | Total | 284 days |

12. The dissent contends this case could have been tried on three earlier occasions. *First*, on March 4, 1968. But the parties elected instead to get ready for and to try Criminal No. 1506–67 which was tried from April 23rd to the 26th, 1968. *Second*, between April 26, 1968 and July 10, 1968. But the parties were occupied during this period with motions to dismiss, to reconsider and to sever. It is also apparent that when these motions were decided appellant was not ready for trial because on July 10, 1968 he requested and obtained a continuance of Criminal No. 1409–67 until September 4, 1968. There is nothing in the record to indicate that appellant's counsel was ready for trial on any other case. *Third*, on May 15, 1969. But appellant had just asked for and obtained a continuance of Criminal No. 1409–67 until June 2, 1969, later extended until June 17, 1969. This indicates the parties were treating Criminal No. 1409–67 as the next case for trial and there is nothing in the record to indicate they could get ready to try any other case. Thus, the *record* does not indicate that any of the alternative dates suggested by the dissent were practical, regardless as to how practical they may now be painted in dissent. Thus the record does not support the feasibility of the reconstructed trial calendar.

### III

It is also concluded that appellant was not prejudicied by the order in which the cases were tried, notwithstanding his claim that he was prejudiced (1) because both his friend and his mother stated they could not remember what he was wearing the night of the alleged assault, and (2) because he had grown and his appearance had changed in the interim between his arrest and the trial of this case. Appellant admitted at trial that when he was arrested on the day following the offense he had been placed on notice that the detectives claimed he was wearing "the same pants" when he was arrested that the complainant charged he was wearing when he committed the assault (Tr. 175). He was thus alerted to the significance the Government placed on the clothes they contended he was wearing and he could easily have acted to impress any witnesses he may have had, who could testify to the contrary on this point, to remember such facts. He had counsel from the beginning. Appellant's counsel talked to his alibi witness *the day after* appellant was arrested (Tr. 135) and to appellant's mother two or three days after the offense (Tr. 135). At trial their memories were good on other points but poor on the clothes the appellant was wearing on the evening of the offense, but they did admit that he might have worn dungarees and blue tennis shoes (Tr. 125, 180–181). Complainant had so described her assailant to the police within thirty minutes of the offense (Tr. 96) and she so testified at trial (Tr. 62, 83, 85–87). When appellant was arrested the next day the trousers and tennis shoes he was wearing matched the description given by the complainant (Tr. 86, 96, 100). That is a sufficient answer to any claim of prejudicial error. *See* King v. United States, 402 F.2d 289, 292 (10th Cir. 1968). Certainly under such circumstances his claim at trial that he personally "just can't remember" is suspect. *See* Blunt v. United States, 131 U.S.App.D.C. 306, 310, 404 F.2d 1283, 1287 (1968), cert. denied, 394 U.S. 909, 89 S.Ct. 1021, 21 L.Ed.2d 221 (1969).

On the matter of possible prejudice, it is also significant that appellant's counsel stated at trial:

> We have always known where the defense witnesses were. They have never moved from the places they were living in March of 1967.

Given the severity and aggravation of these numerous offenses it was necessary that a considerable period of time elapse before they could all be disposed of by trial. One case had to be last and it is not proper to consider No. 471–67 as though it were the only case on the docket. The Government was faced with the necessity of trying appellant on *all* the charges and it is essential that the problem be viewed in that light.[13] By so doing one cannot find that appellant was denied his Sixth Amendment rights. He was released on bail shortly after his first arrest and so continued until he was arrested on the first of the subsequent charges. Thereafter following his trials on the other offenses he was given a work release but was rearrested on June 9, 1969 on another charge of robbery and attempted rape. Under such circumstances the Government is not to be held culpable in this case for such incarceration as resulted on the other cases.

Since I find that appellant was not prejudiced in his trial by the lapse of time it is accordingly concluded that the delay between his arrest and trial was not "arbitrary, purposeful, oppressive or vexatious."[14] If appellant had not moved for a continuance of Criminal No. 471–

---

13. The suggestion of the dissent that an earlier trial of this case might have resulted in a conviction and sentence which would have made the other six trials unnecessary is belied by the fact that the accused was tried twice (the eighth and ninth trials, *supra*) after this conviction on other charges.

14. Smith v. United States, 118 U.S.App. D.C. 38, 41, 331 F.2d 784, 787 (*en banc* 1964).

67 on April 28, 1969,[15] it is most likely that he would have been tried seven times in the fifteen months' period between April 23, 1968 when he first went to trial after having been declared mentally competent and July 28, 1968 when the last case was tried before Criminal No. 471–67. In this respect his request for a short delay may have triggered a necessity for a larger delay. After appellant was declared competent the trial schedule started out with a reasonably prompt setting for the first case and proceeded normally thereafter, with due allowance for necessary continuances. The case is thus not subject to the charge that it involves unconstitutional delay.

It should be noted that the Government's case was also weakened through the loss of two corroborating witnesses (Tr. 68–69) and complainant's in-court identification was rendered arguably less effective by appellant's growth in the interim (Tr. 147–162).[16]

## IV

With respect to the other claims of error raised by appellant I find that the complainant's in-court identification had an independent basis and was properly admitted; that it was proper to use appellant's photograph taken in connection with a juvenile arrest for identification purposes in this case, Kent v. United States, 119 U.S.App.D.C. 378, 391–392, 343 F.2d 247, 260–261 (1954), rev'd on other grounds, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); that the jury was correctly instructed on corroboration and the elements of the offense of which appellant was found guilty; [17] and that its verdict is adequately supported and corroborated by the evidence.

In conclusion it should be recognized that, after the accused was determined to be mentally competent to stand trial, each trial thereafter occurred within a reasonable period after the prior trial, subject to necessary continuances, most of which were at appellant's request and some of which could be said to be for the exclusive benefit of the Government. The rationale of this opinion does not impose any obligation upon appellant to request an earlier trial date for this case but he cannot escape his share of responsibility for the very considerable delays which were caused by the continuances he requested and by the time necessarily consumed by the other trials which were the result of his conduct. Also his motions for continuance of the case to other dates necessarily involved an implicit consent to not try this case during that period or at the date fixed for the trial of the case that was continued. It is accordingly my conclusion, after full consideration of all the reasons for not reaching the seventh trial until September 3, 1969, that the Sixth Amendment rights of appellant were not violated and that the judgment of conviction should be affirmed.[18]

---

15. The dissent fails to recognize that appellant was chargeable to some extent with the continuance of this case from April 29, 1969 to September 3, 1969. This opinion only charges him with the period until May 15th, which his counsel stated was her original request, but it must be recognized that this continuance may have made it necessary to grant the further continuance to September 3, 1969 because of the temporary incapacity of complainant.

16. Some of the evidence was to the effect that appellant's height and weight changed from 5'9" and 147 pounds in 1967 to 5'11" and 152 pounds by September 1969.

17. Trial counsel did not raise any objection to the instructions given by the court.

18. The assertion in the dissent that the accused was available at all times for a trial (on Criminal No. 471–67) except for a four month period ignores the fact that as a practical matter appellant was not available for trial during most of the seventeen months' period from February 20, 1968 until July 29, 1969 because his counsel was preparing for and was actually engaged in the other six trials. During this period appellant also moved for three continuances, joined in another motion for continuance and successfully moved to dismiss one indictment and to

FAHY, Senior Circuit Judge (dissenting):

I would reverse appellant's conviction on the ground he was not afforded the speedy trial to which he was entitled under the Sixth Amendment. The offense occurred on March 1, 1967, when appellant was 18 years of age. He was arrested the next day but was not brought to trial until thirty months later, on September 3, 1969. Proof with respect to the attempted rape was an uncomplicated matter, involving only five Government witnesses.[1] Obviously the trial was not speedy as a factual matter. Absent strong countervailing evidence this goes a long way toward establishing that the trial also was not speedy as a legal matter.

■ We held in McNeill v. United States, No. 21,570 (D.C.Cir. June 4, 1968) (unreported), that "the burden is on the Government, not the defense, to bring a case to trial." Moreover, "the longer the time between arrest and trial, the heavier the burden of the Government in arguing that the right to a speedy trial has not been abridged." Hedgepeth v. United States, 124 U.S.App. D.C. 291, 294, 364 F.2d 684, 687 (1966). When thirty months elapsed after arrest before trial of this simple case, the accused always having been available except for four months, the Government's burden, it seems to me, was not met. Reliance upon a theory of silent acquiescence by appellant in the delay, because of other prosecutions against him, is not a discharge of the Government's responsibility under McNeill and the Sixth Amendment. *See also* Coleman v. United States, 142 U.S.App.D.C. 402, 442 F.2d 150 (1971).

Delays caused by appellant's trial counsel, of course, are different. McNeill v. United States, *supra.* In addition, some delays are unavoidable and must be accepted in the interests of public justice. *See* Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 49 L.Ed. 950 (1905). The only delays in this case which can in any sense be attributable to appellant, however, were the four months from October 1967 to February 1968 when appellant's competency to stand trial was being investigated, and the delay of sixteen days from April 29 to May 15, 1969 to obtain a transcript, not earlier requested because, as stated by defense counsel, "there was a strong indication that the case would not go to trial."[2] Moreover, the four months consumed in the investigation of his competency cannot be entirely eliminated, for the passage of that time must also be taken into account by the Government in appraising its obligation timely to certify the case for trial.

The chief reason ascribed by the Government to justify the delay is that some eight months after the offense, during which of course appellant could have been tried, he became involved in other offenses for which he was tried. Thus, he was indicted in another case, Criminal No. 1409–67, on November 6, 1967, some six and one-half months after the indictment in the present case, on six counts of robbery and assault with a dangerous weapon. The counts of this indictment were severed to require three separate trials.

sever the counts in another indictment. This alone delayed the trial here 284 days (*see* note 10 *supra*). Appellant cannot disavow his responsibility for the delays in trying this case that were caused by his other trials and continuances. Further, the dissent unduly minimizes the complications surrounding this trial by attempting to focus attention principally on the nature of the offense and to characterize the case as uncomplicated and simple and thereby ignore the principal difficulty which was in fitting the case into appellant's trial calendar. Furthermore, no criminal case

charging a felony these days in the United States courts in the District of Columbia can be considered to be uncomplicated and simple.

1. The trial testimony was completed in two days, with the examination and cross-examination of witnesses covering 153 pages of the transcript.

2. The District Court on February 26, 1969, said that it would dismiss the case "[u]nless the Government gives written assurance within one month that it can produce the complaining witness for trial in April."

He was then tried on two of the counts ten months after the indictment, resulting in a mistrial. One month later he was acquitted on two counts; five and one-half months after this he was acquitted on two other counts; and four months later he was acquitted on the remaining two counts. He was also indicted in another case, Criminal No. 1447–67, on November 20, 1967.[3] This indictment was dismissed six months later. Finally, December 4, 1967, seven and one-half months after the present indictment, he was indicted in still another sex case, Criminal No. 1506–67.[4] This case was tried in April 1968, resulting in a mistrial; nearly a year later, in January 1969, he was tried again in that case and acquitted.

To find now that it would have been oppressive of appellant and his court-appointed counsel for the Government to have certified this case for trial while the proceedings incident to the foregoing indictments were in progress, and that, therefore, he was not denied a speedy trial in this case, I think has neither factual nor legal support. Such a theory was never advanced by appellant or his counsel. It is wholly gratuitous. Far more oppressive was the choice of the Government to hold off trying this earlier offense while repeatedly and unsuccessfully seeking to convict him for other offenses in six separate trials. Had this case of earlier origin been tried and resulted as it later did in a conviction, it might well be that the other six trials, none of which resulted in convictions, would never have occurred. In any event appellant has been subjected to the extra-ordinary oppression incident to defending in six other trials prior to the trial in the case at bar two and one-half years after his arrest.

Four particular periods can be emphasized during which appellant reasonably could have been tried for the present offense. First, he could have been tried during the period from March 1967, when he was arrested, to October 1967, when he was examined for mental competency. Secondly, appellant could have been tried on March 4, 1968. The Government had certified the case for trial on that date. It was already a year old. Appellant had been detained in custody since his mental examination on October 19, 1967, an examination which of course he had a right to request, and the court to grant, without forfeiting his right to a speedy trial. Nevertheless, the case was decertified by the Government for trial March 4, 1968, without a reason being given. Thirdly, he could have been tried between April 26, 1968 and July 10, 1968. During this period appellant moved to sever the counts in Criminal No. 1409–67 and to dismiss the indictment in Criminal No. 1447–67.[5] Fourthly, I think the Government could have tried appellant for the instant offense on May 15, 1969. On April 17, 1969, the Government announced it was ready for trial, the case later being set for trial for April 29, 1969. Shortly before the date set for trial, however, appellant, claiming "that there was a strong indication that the case would not go to trial," requested a delay until May 15, 1969, to obtain a preliminary hearing transcript.[6] The further delay until Sep-

---

3. Carnal knowledge, robbery and assault with a dangerous weapon.

4. Robbery, rape, assault with intent to rape, assault with a dangerous weapon.

5 Both motions were granted by the District Court.

6. Appellant's counsel stated at the hearing on September 3, 1969, to dismiss the indictment for lack of a speedy trial, that "[t]he only delay which I requested * * * was that from April 29 until May 15." He explained: "I was con-strained at this time to ask for what I wanted was a brief continuance, long enough to get the preliminary hearing transcript. As it turned out, a much longer continuance was granted because at the time the complaining witness in this case was pregnant and it was not thought well to bring her over on a plane too close to her time of confinement." The Government's only response was that the delay until September 3, 1969 "was reasonable in view of the fact that the complainant was pregnant." Moreover,

tember 3, 1969, ordered by the court on April 28, 1969, probably due to the fact the complaining witness was out of the country and pregnant, is of course understandable, but it does not argue against appellant's position that he was denied a speedy trial.

Judge MacKinnon questions the reasonableness of concluding that the Government should have certified appellant's case for trial during any one of the four above-mentioned periods. P. 1121 n. 12 *supra*. The collateral factors advanced for this position, however, are not in my view such as relieved the Government of its own burden to bring this case to trial at any one of these opportunities. First, there is no indication in the record, nor a contention by the Government on this appeal, that the reason the case was decertified from the ready calendar on March 4, 1968, was because "the parties elected instead to get ready for and to try Criminal No. 1506–67 which was tried from April 23rd to the 26th, 1968." P. 1121 n. 12 *supra*. Secondly, the fact that appellant requested a continuance on July 10, 1968, in Criminal No. 1409–67—the counts of the indictment had been severed one and a half months earlier to require three separate trials—did not derogate from the Government's responsibility to certify for trial the instant case between April 26 and July 10, 1968, when it had the opportunity. Thirdly, the request on May 7, 1969, for a continuance in Criminal No. 1409–67 does not indicate, as Judge MacKinnon says, that "the parties were treating Criminal No. 1409–67 as the next case for trial and there is nothing in the record to indicate they could get ready to try any other case." P. 1121 n. 12 *supra*. To the contrary, the request of May 7

the Government states on this appeal that "because the complainant was expecting her second child during that summer, the

for a continuance in Criminal No. 1409–67 probably was occasioned by the earlier continuance of April 28 of the present case to September 3, 1969. The indications are that appellant would have been ready to try this case on May 15, 1969, after he obtained a preliminary hearing transcript.

It seems obvious from the whole course of events that the Government, after failing in each of the other trials, resorted to this substantially earlier case thirty months after appellant's arrest not to avoid oppressiveness of him but to serve alone its own purposes, in disregard of appellant's Sixth Amendment right to a speedy trial. The delay was purposeful, lengthy, and oppressive. *See* United States v. Parrott, 248 F.Supp. 196, 203 (D.D.C.1965). It was also prejudicial if for no other reason than appellant was incarcerated for some 18 months, with the charge overshadowing him for thirty months. The Supreme Court recently has referred to "the important values implicit in the constitutional guarantee of a speedy trial." Groppi v. Wisconsin, 400 U.S. 505, 510, 91 S.Ct. 490, 493, 27 L.Ed.2d 571 (1971), citing Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967); Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L. Ed.2d 607 (1969); and Dickey v. Florida, 398 U.S. 30, 39, 90 S.Ct. 1564, 26 L. Ed.2d 26 (1970) (Brennan, J., concurring). These cases are instructive of the Court's solicitude to protect the right to a speedy trial, which it describes as "one of the most basic rights preserved by our Constitution." Klopfer v. North Carolina, *supra*, 386 U.S. at 226, 87 S.Ct. at 995.

I respectfully dissent.

case was continued until September 1969."